# Wytheville

## ALBERT MACK v. COMMONWEALTH OF VIRGINIA.

June 9, 1941.

Record No. 2420.

Present, All the Justices.

922

*Vivian L. Page,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Joseph L. Kelly, Jr., Assistant Attorney-General,* for the Commonwealth.

HUDGINS, J., delivered the opinion of the court.

Thomas Burton and Albert Mack were charged jointly with robbing Sam Lawhon. They elected to be tried separately. Thomas Burton was acquitted. The first jury sworn to try Albert Mack was discharged by the court over the protest of the accused. On the second trial Albert Mack pleaded former jeopardy, to which plea the Commonwealth demurred. The demurrer was sustained and, on the trial, he was found guilty and sentenced to confinement in the penitentiary for a period of eight years. This writ of error was granted to review the ruling of the trial court on the plea of former jeopardy.

The record is very brief. It contains copies of the indictment, the pleas and the orders of the court. While no bill of exception was necessary to make the pleadings or the orders a part of the record, three bills of exception, containing nothing except the pleas and the orders, were presented to and signed by the trial judge. The Attorney General moved to dismiss the writ on the ground that the bills of exception were not presented to the trial judge within the time required by law. It is useless to consider this motion because, even if it were sustained, the material facts would be before this court, as they are stated in the plea of former jeopardy.

These material facts are that Thomas Burton, who elected to be tried separately, was acquitted; and that, after a jury was selected and sworn to try plaintiff in error, the Commonwealth called Sam Lawhon, the victim of the alleged robbery, as a witness in its behalf. The attorney for plaintiff in error, on cross examination of this witness, elicited the information contained in the following questions and answers:

"Q. Did you not testify in the case against Thomas Burton, who was jointly indicted with the accused, Albert Mack?

"A. I did.

"Q. And in spite of your testimony, he was acquitted?

"A. Yes."

Immediately thereafter the attorney for the Commonwealth moved to discharge the jury on the ground that the above testimony was highly prejudicial to the rights of the Commonwealth. This motion was sustained over protest of plaintiff in error.

Before a second jury was called, plaintiff in error filed his plea of former jeopardy, to which (as stated) a demurrer, filed on behalf of the Commonwealth, was sustained. Plaintiff in error was put upon his trial and convicted. It is conceded that the evidence introduced by the Commonwealth before the last jury was ample to support the verdict of guilty returned by them.

The only question presented is whether the accused was in jeopardy before the first jury within the meaning of section 8 of the Constitution, providing that no person shall "be put twice in jeopardy for the same offense."

One provision of the Fifth Amendment to the Constitution of the United States is that no person shall be "twice put in jeopardy of life or limb" for the same offense. The jury in the case of *United States* v. *Josef Perez,* 9 Wheat. (22 U. S.) 579, 6 L. Ed. 165, decided 1824, was discharged without the consent of the accused because they were unable to agree. Mr. Justice Story, in

delivering the opinion of the court, said: "We think that in all cases of this nature the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and in capital cases especially, courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the judges, under their oaths of office. We are aware, that there is some diversity of opinion and practice on this subject, in the American courts; but, after weighing the question with due deliberation, we are of opinion, that such a discharge constitutes no bar to further proceedings, and gives no right of exemption to the prisoner from being again put upon trial."

In 1838, a jury in the county of Henrico was unable to agree. On the 9th day after they became deadlocked, one of the jurors informed the court that his wife was expected to be confined the next day and hence it was imperative for him to be relieved from further service. Another juror wrote the court that his health was being seriously jeopardized by the continued confinement. On these grounds the court discharged the jury over the protest of the accused. Thereafter the accused pleaded former jeopardy. His plea was overruled. Another jury was impanelled and returned a verdict of guilty. On

appeal, this court, after reviewing a number of English and American decisions, said:

 "One general rule is deducible from all the cases; which is, that the court may discharge the jury whenever a necessity for so doing shall arise: but what facts and circumstances shall be considered as constituting such a necessity, cannot be reduced to any general rule. The power to discharge is a discretionary power, which the court, as in all other cases of judicial discretion, must exercise soundly, according to the circumstances of the case. The object of the law is to obtain a fair and just verdict, and whenever it shall appear to the court that the jury impanelled cannot render such a verdict, it ought to be discharged, and another jury impanelled. This is emphatically the case of necessity contemplated in the authorities we have referred to; as where the prisoner became too sick to attend to his defence, or one of the jury was rendered physically unable to discharge his duty. There are other cases of necessity equally strong, one of which probably is, where a juror, from the peculiar condition of his mind and feeling, is manifestly disqualified from bestowing on the case that attention and impartial consideration which is necessary to a just verdict." *Commonwealth* v. *Fells,* 9 Leigh (36 Va.) 613, 618.

The above principle was declared to be the common law rule on the subject. In 1848 this principle was embraced in the following statute: "If a juror, after he is sworn, be unable from any cause to perform his duty, the court may, in its discretion, cause another qualified juror to be sworn in his place. And in any criminal case, the court may discharge the jury, when it appears they cannot agree in a verdict, or that there is a manifest necessity for such discharge." Code of 1849, ch. 208, sec. 12. This statute has remained unchanged since it was first adopted and is now Code, section 4903.

██ Mr. Justice Gregory, in *Rosser* v. *Commonwealth,* 159 Va. 1028, 1032, 167 S. E. 257, said: "After the jury has been sworn, if a *nolle prosequi* is entered and the in-

dictment is dismissed without the consent of the accused, it amounts to an acquittal and bars further prosecution for the same crime unless there be manifest and urgent necessity for the entry of the *nolle prosequi*."

In *Simmons* v. *United States,* 142 U. S. 148, 154, 12 S. Ct. 171, 35 L. Ed. 968, Mr. Justice Gray, speaking for the court, said:

"There can be no condition of things in which the necessity for the exercise of this power is more manifest, in order to prevent the defeat of the ends of public justice, than when it is made to appear to the court that, either by reason of facts existing when the jurors were sworn, but not then disclosed or known to the court, or by reason of outside influences brought to bear on the jury pending the trial, the jurors or any of them are subject to such bias or prejudice as not to stand impartial between the government and the accused. As was well said by Mr. Justice Curtis in a case very like that now before us, 'It is an entire mistake to confound this discretionary authority of the court, to protect one part of the tribunal from corruption or prejudice, with the right of challenge allowed to a party. And it is, at least, equally a mistake to suppose that, in a court of justice, either party can have a vested right to a corrupt or prejudiced juror, who is not fit to sit in judgment in the case.' *United States* v. *Morris,* 1 Curtis C. C. 23, 37." See *Thompson* v. *United States,* 155 U. S. 271, 15 S. Ct. 73, 39 L. Ed. 146.

█ The general rule declared by statute or established by decided cases is that a trial court may, in the exercise of a sound discretion, discharge a jury without the consent of the accused when there exists a manifest necessity therefor or the ends of public justice so require, and that such discharge will not support a plea of former jeopardy. See *State* v. *Thompson,* 58 Utah 291, 199 Pac. 161, 38 A. L. R. 697, and note 706; *State* v. *Slorah,* 118 Me. 203, 106 A. 768, 4 A. L. R. 1256; and *Baker* v. *Com-*

*monwealth,* 280 Ky. 165, 132 S. W. (2d) 766, 125 A. L. R. 691, and note 694.

█ The specific question presented by this record is whether the trial court, in discharging the jury under the circumstances disclosed, abused that discretion stated in the general rule. All presumptions exist in favor of the regularity of the judgments of courts of general jurisdiction, and he who asserts the contrary is required to overcome the presumption by record proof. See *Salistean* v. *State,* 115 Neb. 838, 215 N. W. 107, 53 A. L. R. 1057; *People* v. *Simos,* 345 Ill. 226, 178 N. E. 188.

The facts on which the accused relies are that he, through his counsel, produced before the first jury evidence proving or establishing the fact that another jury, on the trial of another defendant charged with participation in the same crime, disbelieved the testimony of the same witness and acquitted the other defendant. It was held in *Green* v. *Commonwealth,* 170 Va. 619, 195 S. E. 520, that it was reversible error for the prosecution to permit the judgment of conviction pronounced by a trial justice to be introduced when the case was tried on appeal in the circuit court.

█ If this other defendant had been convicted on the testimony of the prosecuting witness and the Commonwealth had proven that fact on the trial of the accused, the introduction of such evidence would have constituted reversible error. While the Commonwealth, by constitutional mandate (section 88 of the Virginia Constitution), has no appeal (with certain exceptions) in a criminal case, this denial of appeal does not mean that the Commonwealth is not entitled to a trial by jury free from all bias, prejudice or improper influences, and to a verdict based on legal testimony.

█ The administration of justice demands that verdicts, criminal as well as civil, shall be rendered impartial juries and shall be the result of honest deliberation, free from prejudice or bias.

In *State* v. *Slorah,* 118 Me. 203, 106 A. 768, 4 A. L. R. 1256, 1261, this is said: ''The public as well as the accused have rights which must be safeguarded. If during the progress of a trial it shall become known to the court that some of the jury do not stand indifferent, whether toward the state or the accused, it would be a travesty on the administration of justice if the trial must proceed, and, if acquitted by such a tribunal, the constitutional safeguard may be invoked against again placing him in jeopardy before an impartial jury. Such a trial obviously should not constitute jeopardy, whether the jury be prejudiced or influenced in behalf of the accused or the state. To prevent such a perversion of justice, it is now well recognized that, if it comes to the knowledge of the presiding justice that such conditions exist, it creates that imperious, manifest necessity that will warrant a discharge of the jury, and such discharge will constitute no bar to another trial on the same indictment.''

A person on trial for a capital or lesser offense may waive his right to plead former jeopardy. This waiver may be expressed or implied. The guaranty of immunity is a restraint on the officers of the court, not on the accused. The Commonwealth was proceeding in the orderly methods provided by law for the trial of the accused. Counsel for the accused, by his misconduct, voluntarily injected into the case, for the advantage of the accused and contrary to law, evidence illegal and highly prejudicial to the rights of the Commonwealth.

It is not necessary to prove that the impertinent testimony actually influenced the minds of the jury. If the attorney for the Commonwealth had introduced such evidence tending to bias the jury in behalf of the prosecution, no verdict of guilty, based on such prejudicial evidence, would be affirmed by the court. The Commonwealth, as well as the accused, is entitled to a verdict based on relevant evidence. No mitigating circumstances

or excuses are suggested for the introduction of such testimony.

In *State* v. *Slorah, supra,* the accused was on trial for murder. While on a view of the premises, he threw himself on the ground and exclaimed in the presence of the jury, ''My God! take me away from here or I shall be insane again.'' The Maine court held that this created an urgent necessity requiring dismissal of the jury and a continuance of the case.

In *Commonwealth* v. *Cronin,* 257 Mass. 535, 154 N. E. 176, the trial acourt, over an exception of defendant, excluded certain evidence, stating, ''I will save your exception;'' whereupon counsel for the defendant said : ''Save my exceptions to that, and I will ask you to save my exception also to this, that your ruling is a direct violation of the constitutional rights of the defendant and of all the rights available to him under the Constitution to show his defence on his trial.'' Thereupon the jury was discharged. On the second trial, his plea of former jeopardy was rejected and thereafter he was convicted. On review by the appellate court, this is said :

''It is manifest that we have no means of determining, as did the trial judge, the effect which the statement of counsel might reasonably have had upon the minds of the jurors. If the judge, acting impartially, as we must assume he did, believed that the statement of counsel was likely to result in an unjust verdict, we cannot say that his action was without justification. Of course, he could not exercise the power vested in him to act arbitrarily or without good cause to believe that the action he took was necessary to prevent great injustice either to the Commonwealth or to the defendant. The power of the court is always to be used alike for the protection of the public and for the security of the defendant in his right to an impartial trial.''

If the plea were sustained and the accused dismissed, the acquittal would be the result of the misconduct of the counsel for the accused, a result which it does

not appear that the court could have prevented in time to avoid the harmful effect on the jury. The only reasonable inference to be drawn from the allegations in the plea is that the introduction of the prejudicial testimony was more than a mere inadvertence. A trial court is in a much better position than an appellate court to determine whether such testimony was reasonably calculated to prejudice the jury. The trial judge evidently concluded that introduction of the testimony was willful and deliberate, and that the error was such that it could not be cured by striking the evidence from the record and instructing the jury to disregard it.

The facts alleged in the plea are not sufficient to overcome the presumption that the ruling of the trial court thereon was correct. The judgment of the trial court is

*Affirmed.*