COURT OF APPEALS OF VIRGINIA


Present:  Judges Baker, Bray and Overton
Argued at Norfolk, Virginia


CURTIS A. BRANDON, JR., S/K/A
 CURTIS ALLEN BRANDON, JR.

v.        Record No. 2600-94-1            OPINION
                                   BY JUDGE JOSEPH E. BAKER
COMMONWEALTH OF VIRGINIA              MARCH 12, 1996

        FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                 Jerome B. Friedman, Judge

           Theresa B. Berry (Samford & Berry, on brief),
           for appellant.

           Brian Wainger, Assistant Attorney General
           (James S. Gilmore, III, Attorney General;
           Leah A. Darron, Assistant Attorney General,
           on brief), for appellee.


     Curtis Allen Brandon, Jr. (appellant) appeals from a

judgment of the Circuit Court of the City of Virginia Beach

(trial court) that approved jury verdicts convicting him for

robbery, use of a firearm in the commission of robbery, and for

grand larceny.  The determinative question on appeal is whether

the trial court erred in denying appellant's pretrial motion to

dismiss the indictments on the ground that further prosecution

was barred by the double jeopardy provisions of the Federal and

State Constitutions.  Appellant's motion was based upon the trial

court's order that sustained the Commonwealth's motion for a

mistrial granted over appellant's objection in a prior trial at

which jeopardy had attached.  Appellant asserts that no manifest

necessity or public interest is shown by the record to support

his being deprived of his constitutional right to have his trial completed by the particular tribunal before which jeopardy previously had attached.

The facts are not in dispute. On December 15, 1993, appellant was arrested and subsequently indicted on the charges for which he stands convicted. On July 27, 1994, a jury was sworn, pleas of not guilty were entered, and four witnesses were presented by the Commonwealth. The fourth witness (Williamson), a juvenile, on direct examination testified that on November 2, 1993, he and appellant went to the home of fourteen-year-old Paul Martin and that while there appellant stole a .44 caliber magnum handgun. Williamson testified further that appellant telephoned him that evening and asked him if he wanted to rob a pizza delivery man with the gun that appellant had stolen. Williamson declined. Appellant used the handgun stolen from the Martin home in the robbery of a pizza delivery man the following evening.

Williamson, who was sixteen years old at the time, had previously been charged with statutory rape. The juvenile and domestic relations district court deferred a finding in that case and held that if Williamson was of good behavior and completed community service, the charge would be reduced to misdemeanor assault.

On cross-examination, appellant's counsel asked Williamson if he was on probation. Williamson stated that he was not. Appellant then asked Williamson if he was "subject to a deferred

finding." Williamson answered, "No. I'm off probation." Appellant again asked Williamson if he was subject to a deferred finding. Williamson responded, "What does that mean?" Appellant's counsel asked, "Would the court like me to explain?" and then asked Williamson, "How did the court dispose of that rape charge you had?" Until that question was asked, the trial court had permitted all the other questions to be answered. The Commonwealth objected, and the jury was excused from the courtroom.

The trial court stated that only questions relating to a witness's criminal convictions are admissible. Appellant's counsel argued that the questions about the deferred finding were asked to show Williamson's bias in favor of the Commonwealth. The Commonwealth responded that the cross-examination was improper and requested a mistrial, asserting that Williamson was a crucial witness and that his credibility had been damaged beyond repair. The trial court observed that Williamson was "a very material witness."[1] Without considering any alternative, the trial court found that "based on [the] question [How did the court dispose of that rape charge you had?] I'm going to have to declare a mistrial."[2]

Trial on the indictments was rescheduled for December 13,

---

[1]The transcript of the December 13, 1994 trial at which appellant was convicted discloses that Williamson did not testify.

[2]The trial court made no initial finding of "manifest necessity" or "public interest."

1994.  Prior to trial, appellant's motion to dismiss the indictments based upon double jeopardy was denied, and the trial proceeded before a jury, which convicted him.  From those convictions appellant appeals.

Appellant argues that the questions propounded to the witness on cross-examination were designed to show bias because Williamson may have believed that he was required to cooperate with the Commonwealth in order to receive a favorable disposition with respect to his deferred finding.  Appellant contends that the trial court thus erroneously declared a mistrial.  We agree.

When an accused testifies on his own behalf, his prior convictions while a juvenile may not be shown if its purpose is only to show that he is unworthy of belief.  See Kiracofe v. Commonwealth, 198 Va. 833, 845, 97 S.E.2d 21, 22 (1957).  However, we have been cited no authority, and have found none, that would bar cross-examination that tends to show a juvenile's testimony may be biased because of perceived favorable treatment in the disposition of his criminal case in exchange for his testimony against the accused.  To the contrary, prohibiting such cross-examination is constitutional error.  See Davis v. Alaska, 415 U.S. 308, 319 (1974) ("[T]he right of confrontation is paramount to the State's policy of protecting a juvenile offender").  A juvenile's testimony against the accused can be just as prejudicial as an adult's testimony, and just as biased.  If Williamson did not believe that he had to testify favorably

- 4 -

on behalf of the Commonwealth, he should have been permitted to say so.  If he did so believe, the fact finder was entitled to weigh that fact against others presented at trial.

In Hewitt v. Commonwealth, 226 Va. 621, 311 S.E.2d 112 (1984), Justice Russell said:

> We have consistently held that the right of an accused to cross-examine prosecution witnesses to show bias or motivation, when not abused, is absolute.  It rests upon the constitutional right to confront one's accusers.  Whittaker v. Commonwealth, 217 Va. 966, 968, 234 S.E.2d 79, 81 (1977); Davis v. Commonwealth, 215 Va. 816, 822, 213 S.E.2d 785, 789 (1975); Woody v. Commonwealth, 214 Va. 296, 299, 199 S.E.2d 529, 531-32 (1973); Moore v. Commonwealth, 202 Va. 667, 669, 119 S.E.2d 324, 327 (1961).  In Whittaker we said:
>
>> Just as a defendant is entitled to show that testimony of a prosecution witness was motivated by an expectation of leniency in a future trial, a defendant is entitled to prove facts that would support an inference that such testimony was motivated by a bargain for leniency granted in a previous trial.

Id. at 623, 311 S.E.2d at 114.

Jeopardy attached when, on July 27, 1994, the jury was selected and sworn, appellant was arraigned, and the Commonwealth proceeded to present evidence.  Crist v. Bretz, 437 U.S. 28, 38 (1978).  The Fifth Amendment to the Constitution of the United States provides that no person shall be "twice put in jeopardy of life or limb" for the same offense.  See Mack v. Commonwealth, 177 Va. 921, 925, 15 S.E.2d 62, 63 (1941).  Double jeopardy

protection is implicated even though the trial may have terminated without a verdict.  See <u>Adkins v. Bordenkircher</u>, 517 F. Supp. 390 (1981), <u>aff'd</u>, 674 F.2d 279 (4th Cir. 1982).

> Because jeopardy attaches before the judgment becomes final, the constitutional protection also embraces the defendant's "valued right to have his trial completed by a particular tribunal."  The reasons why this "valued right" merits constitutional protection are worthy of repetition.  Even if the first trial is not completed, a second prosecution may be grossly unfair.  It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted.  The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed.  Consequently, as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial.

<u>Arizona v. Washington</u>, 434 U.S. 497, 503-05 (1978).

It has long been said that the underlying reason for this constitutional protection

> is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

<u>Green v. United States</u>, 355 U.S. 184, 187-88 (1957).

The "particular tribunal" principle is implicated whenever a mistrial is declared over the defendant's objection and without regard to the presence or absence of governmental overreaching.

See <u>Gilliam v. Foster</u>, ___ F.3d ___ (4th Cir. 1996).  If the "right to go to a particular tribunal is valued, it is because, independent of the threat of bad-faith conduct by judge or prosecutor, the defendant has a significant interest in the decision whether or not to take the case from the jury . . . ." <u>United States v. Jorn</u>, 400 U.S. 470, 485 (1971).  "Reprosecution after a mistrial has unnecessarily been declared by the trial court obviously subjects the defendant to the same personal strain and insecurity regardless of the motivation underlying the trial judge's action."  <u>Id.</u> at 483.

The Court in <u>Washington</u> recalled the time in English history when judges served the Stuart monarchs by exercising a power to discharge a jury whenever it appeared that the Crown's evidence would be insufficient to convict, and noted that the prohibition against double jeopardy as it evolved in this country was designed to condemn this "abhorrent" practice.[3]  However, in applying the double jeopardy provision to cases where a mistrial was granted on the motion of the prosecution, our courts have long recognized that in certain cases that procedure could be justified.  In <u>United States v. Perez</u>, 22 U.S. (9 Wheat) 579 (1824), the United States Supreme Court adopted what has become known as the "manifest necessity" rule to "protect the public interest."  When a "manifest necessity" is shown for a mistrial,

---

[3]Subsequently, in England, a rule developed permitting a trial judge to declare a mistrial where "evident necessity" demanded. <u>See</u> <u>Winson v. The Queen A.R.Q.B.</u> 289, 305 (1866).

the defendant's valued right to have his trial completed by a particular tribunal must be subordinated to the public's interest in fair trials designed to end in just judgments. Illinois v. Somerville, 410 U.S. 458, 470 (1973); see Code § 8.01-361; Washington v. Commonwealth, 216 Va. 185, 194, 217 S.E.2d 815, 823 (1975); Mack, 177 Va. at 928, 15 S.E.2d at 65.

There is no specific standard by which to determine what facts and circumstances constitute a "manifest necessity." Turnbull v. Commonwealth, 216 Va. 328, 335, 218 S.E.2d 541, 546 (1975). Generally, that determination is left to the sound discretion of the trial court, which is in a better position than an appellate court to determine whether improper testimony would prejudice the jury to the extent that a mistrial should be ordered. Mack, 177 Va. at 932, 15 S.E.2d at 66. In Mack, the Court approved the following statement from Commonwealth v. Cronin, 257 Mass. 535, 154 N.E. 176 (1926):

> "It is manifest that we have no means of determining, as did the trial judge, the effect which the statement of counsel might reasonably have had upon the minds of the jurors. If the judge, acting impartially, as we must assume he did, believed that the statement of counsel was likely to result in an unjust verdict, we cannot say that his action was without justification. Of course, he could not exercise the power vested in him to act arbitrarily or without good cause to believe that the action he took was necessary to prevent great injustice either to the Commonwealth or to the defendant. The power of the court is always to be used alike for the protection of the public and for the security of the defendant in his right to an impartial trial."

- 8 -

Mack, 177 Va. at 931, 15 S.E.2d at 66.

To justify the declaration of a mistrial, the objectionable evidence must be so prejudicial that it probably would remain in the minds of the jury and influence its verdict even if it were told to disregard it. See Beavers v. Commonwealth, 245 Va. 268, 280, 427 S.E.2d 411, 420, cert. denied, 114 S. Ct. 171 (1993); Asbury v. Commonwealth, 211 Va. 101, 104, 175 S.E.2d 239, 241-42 (1970).

> [I]n view of the importance of the right, and the fact that it is frustrated by any mistrial, the prosecutor must shoulder the burden of justifying the mistrial if he is to avoid the double jeopardy bar. His burden is a heavy one. The prosecutor must demonstrate "manifest necessity" for any mistrial declared over the objection of the defendant. The words "manifest necessity" appropriately characterize the magnitude of the prosecutor's burden. . . . Indeed, it is manifest that the key word "necessity" cannot be interpreted literally; instead, contrary to the teaching of Webster, we assume that there are degrees of necessity and we require a "high degree" before concluding that a mistrial is appropriate.

Washington, 434 U.S. at 505-06.

Any doubt as to the validity of the trial court's declaration of a mistrial should be resolved in favor of the accused. United States v. Chase, 372 F.2d 453, 466 (4th Cir.), cert. denied, 387 U.S. 907 (1967). In our judgment, the Commonwealth failed to meet its burden to show that a "manifest necessity" existed for the declaration of a mistrial in this case. The Commonwealth's argument that Williamson's testimony

was crucial to its case lends no support to a finding of "manifest necessity"; it only serves to highlight the error in denying appellant the opportunity to cross-examine him for bias. Moreover, the Commonwealth's argument is belied by the fact that it did not call upon Williamson to testify in the trial subsequent to the mistrial.

Unless unscrupulous defense counsel is to be allowed an unfair advantage, the trial court must have the power to declare a mistrial in appropriate cases. There is no evidence in the case before us that defense counsel was guilty of any misconduct. On the contrary, appellant had the right to pursue the question of possible witness bias as it may have related to the deferred finding. The trial court improperly denied defense counsel the right to explore by cross-examination whether Williamson's testimony was biased.

As has been shown, appellant had a constitutional right to cross-examine Williamson concerning his bias and a further constitutional right to be judged by the particular tribunal before which jeopardy had attached. At the time the mistrial order was declared, there was no final order from which he could have appealed. The only remedy available to him was to test by a double jeopardy plea whether the Commonwealth could prove that a manifest necessity existed sufficient to support its motion and the trial court's order for a mistrial.

For the reasons stated, we hold that the record does not

support the Commonwealth's claim of manifest necessity, that the declaration of a mistrial violated appellant's constitutional right to be judged by the particular tribunal before which jeopardy had attached, and that his further prosecution is barred by the Fifth Amendment to the Constitution of the United States. Because the wrongful declaration of a mistrial on the motion of the Commonwealth is equivalent to an acquittal, the conviction is reversed and the charges against appellant are dismissed.

<u>Reversed and dismissed.</u>