COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Moon, Judges Benton and Elder
Argued at Richmond, Virginia


DEBORAH HINTON COURTNEY
                                            OPINION BY
v.  Record No. 2481-95-2        JUDGE JAMES W. BENTON, JR.
                                          DECEMBER 3, 1996
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF HENRICO COUNTY
                 L. A. Harris, Jr., Judge

       Craig S. Cooley for appellant.

       Richard B. Smith, Assistant Attorney General
       (James S. Gilmore, III, Attorney General, on
       brief), for appellee.


     The trial judge found Deborah Hinton Courtney guilty of

criminal contempt of court.  Courtney contends that (1) the

prosecution was barred by the Double Jeopardy Clause, (2) the

trial judge erred by refusing to allow Courtney's counsel to

withdraw, (3) the trial judge erred by refusing Courtney's

request for a jury trial, and (4) the evidence was insufficient

to support the conviction.  We hold that the prosecution violated

the Double Jeopardy Clause of the United States Constitution, and

we reverse the conviction.

                              I.

     The evidence proved that on December 5, 1994, the trial

judge entered an order establishing a schedule for Courtney's

former husband to visit their two children.  The order stated

that Courtney, the father, and their counsel had met with a youth

service assessment team and that a family service plan had been

prepared as a result of that meeting.  Consistent with the plan,
the order granted the father visitation with the children, who
were in Courtney's physical custody.  Emily Blankinship, a
licensed clinical social worker, was designated to supervise the
initial visits.

The order further provided as follows:

2.  [Courtney] shall select the name of an in
home provider who will facilitate the
father's visitation with the children.  The
in home provider shall be selected from a
list of names available from the Richmond
Youth Service Assessment Team case manager.
[Courtney] shall make her selection and shall
inform the case manager; Emily Blankinship,
LCSW; and the father's counsel of the name,
address and telephone number of the in home
provider by December 15, 1994.  In the event
[Courtney] does not make her selection by
December 15, 1994, then the case manager
shall select the in home provider.

3.  Beginning January 1, 1995, the in home
provider shall facilitate and supervise the
father's visitation with the children for a
period of three hours each week, at such
times and places as the in home provider
directs.  Both parties are ordered to
cooperate fully with the in home provider.

4.  The children shall continue to have
counselling sessions with Emily Blankinship,
LCSW, and [Courtney] shall cooperate fully in
making the children available for counselling
at such times and places as Ms. Blankinship
directs.

Upon the father's motion, the trial judge entered an order
on June 19, 1995, requiring Courtney to appear at a hearing on
July 17, 1995, "to show cause . . . why she should not be held in
contempt of court and punished by fine or imprisonment or both

for failure to comply with the terms of a plan for providing services to the Courtney family and for denying visitation to . . . [the father] since December 15, 1994, as ordered by this Court on December 5, 1994."  At the hearing on July 17, 1995, Courtney was present with her counsel.  Also present and participating as opposing counsel was the Assistant Commonwealth's attorney.

At the beginning of the hearing, the trial judge stated the following:

> [T]his is a matter that originally started out as Joseph Courtney versus Deborah Hinton Courtney and by previous orders it was transferred to the criminal side of the court and styled Commonwealth of Virginia versus Deborah Courtney, was a criminal show cause where evidence has previously been heard pursuant to certain orders of the court and we're back for review of that.

Called as a witness by the Commonwealth, the father testified concerning the plan developed by the youth service assessment team and the hearing on December 5, 1994 that culminated in the visitation order.  He further testified that he had supervised visitation with his children until December 18, 1994 and that he had no visitation after that date.

Blankinship testified for the Commonwealth that the last visitation she supervised was on December 18, 1994.  She also testified that Courtney was "absolutely terrorized" about having contact with the father.  She added that Courtney perceived that the children were in "a very, very dangerous environment" when

- 3 -

they were having visitation with their father. She testified that Courtney "seemed much more distraught, more confused, much more agitated than . . . in the past."

Courtney's counsel did not present any witnesses at the conclusion of the Commonwealth's case. Courtney's counsel made a motion to strike the evidence and argued that the Commonwealth's evidence failed to prove that the "in-home provider" arranged visitations as required by the December 5, 1994 order. In response to the Commonwealth's argument that Blankinship's testimony was sufficient to prove noncompliance, the trial judge stated, "the problem is that the last order of the court, the one that needs to be addressed is what happened with the home provider."

> The trial judge then ruled as follows:
>> Well, here's what should happen. And, you know, I guess you learn the hard way, but anyway, this case at this point is so confusing I'm not sure there's anybody on the face of this earth could ever figure it out, so here's what should happen: Any pending show causes that are now pending that start back in 1992 and 1993, I'm going to dismiss those show causes.
>>
>> Now, there is an order entered by this court on December 5th, 1994, that requires certain things very specifically. Now, does the Commonwealth wish to pursue a show cause order based upon the Defendant's alleged violation of that order?
>>
>> [ASSISTANT COMMONWEALTH'S ATTORNEY]: Yes, Your Honor.

When Courtney's counsel "object[ed] to the court failing to

dismiss the case at this point based on the lack of evidence presented," the trial judge responded, "I have dismissed all pending show causes."

Three days later, the Commonwealth filed a motion to require Courtney to show cause why she should not be held in contempt for failure to abide by the December 5, 1994 order. The trial judge issued a show cause order. Courtney's counsel then filed a pleading alleging that the Double Jeopardy Clause barred the prosecution for any alleged violation that occurred prior to the July 18, 1995 dismissal order. The trial judge denied the plea.

At the September 1995 contempt hearing, the Commonwealth presented testimony from Blankinship and the father that parallelled their testimony at the July hearing. Blankinship testified that her last contact with Courtney had been in December 1994. Unlike the July hearing, the Commonwealth presented testimony from Joan Advent, the in home provider. She testified that she and Courtney missed each other's telephone calls and that her last contact with Courtney was in February 1995. At that time, Courtney indicated that she would contact Advent to reschedule a meeting. Advent had not talked with Courtney since that date and had not attempted to call her.

Samuel Rubin, Ph.D., a clinical psychologist, testified as a witness for Courtney. He testified that Courtney was extremely frightened and "something short of panic[ked]" at the prospect of sending the children to visitation with their father. She

believed, based on his prior conduct, that the children's father would cause them great harm. Dr. Rubin testified that Courtney had an anxiety and thinking disorder that prevented her from responding rationally to the visitation order.

At the conclusion of the evidence, the trial judge found Courtney guilty of criminal contempt and sentenced her to five months in jail. The trial judge suspended four months of that sentence. This appeal followed.

II.

The Fifth Amendment to the Constitution of the United States states that no person "shall be subject for the same offense to be twice put in jeopardy of life or limb." The law is well settled "that jeopardy means the danger of conviction." Rosser v. Commonwealth, 159 Va. 1028, 1036, 167 S.E. 257, 259 (1933). Equally well settled is the principle that jeopardy attaches "[i]n a trial before a court without a jury . . . when the trial has reached the stage where the Commonwealth begins to introduce its testimony." Id.

In opposition to Courtney's claim that she was twice placed in jeopardy when she was tried again in September 1995 for contempt of court, the Commonwealth initially contends that the first hearing that ended in a dismissal of the show cause order was not a criminal prosecution. We disagree.

The Commonwealth argues that Courtney was not arraigned on any charges at the July 17 hearing. However, we note that the

record also fails to establish that Courtney was arraigned on any charges at the September 29 hearing, which the Commonwealth argues was the criminal contempt proceeding.

Moreover, at the beginning of the July hearing, the trial judge stated:

> [T]his is a matter that originally started out as Joseph Courtney versus Deborah Hinton Courtney and by previous orders it was transferred to the criminal side of the court and styled Commonwealth of Virginia versus Deborah Courtney, was a criminal show cause where evidence has previously been heard pursuant to certain orders of the court and we're back for review of that.

Furthermore, the transcript of that hearing clearly establishes that the Assistant Commonwealth's attorney was present and presented evidence on behalf of the Commonwealth. Although the father testified, he did so as the Commonwealth's witness. The transcript contains no indication that the father participated as a litigant in his own behalf, and the transcript showed no appearance by the father's counsel. Indeed, all of the evidence establishes that the parties, including the judge, considered the proceeding to be one for criminal contempt. Clearly, the July 17 hearing was a criminal contempt proceeding in which the Assistant Commonwealth's attorney sought to prove that Courtney had violated the judge's orders.

In addition, the record reveals that the July and September proceedings focused on the same alleged offense. The trial judge clearly indicated that the July 17 hearing was to encompass

- 7 -

allegations concerning violations of all of the orders, including the December 1994 order:

> [JUDGE]: We are here for the show cause order for which this court has heard evidence from back in 1993 where she had violated at that time the visitation Orders of this Court.
>
> [COURTNEY'S COUNSEL]: Will then argument be limited to the evidence that was put on in July of '93?
>
> [JUDGE]: No, it's going to be heard because since that time there were other orders entered which she has violated. . . .

The record clearly establishes that the Commonwealth presented testimony at the July 17 hearing in an attempt to prove criminal contempt. That testimony bore exclusively upon violation of the December 5, 1994 order. Both the father and Blankinship, who supervised the initial visitations, were asked by the Commonwealth to testify concerning "what was supposed to occur from [the entry of the December 5 order] until this date." Indeed, both witnesses discussed in their direct testimony the circumstances that gave rise to the December 5 order and events that occurred from December 5, 1994 to the date of the hearing. The record establishes beyond dispute that the testimony at the September hearing replicated the evidence presented at the July proceeding. Therefore, both proceedings focused on the same offense.

Finally, the record reveals that at the conclusion of the Commonwealth's evidence in the July proceeding, Courtney's

counsel moved to strike the evidence because of a failure of proof.  Although the Assistant Commonwealth's attorney argued that the trial judge had sufficient evidence upon which to find Courtney in contempt, the trial judge stated his concern that the person who was designated in the December 5 order to arrange the visitations did not testify.  When the trial judge dismissed "all pending show causes," the only reason stated for the dismissal was his view that "this case at this point is so confusing . . . [that nobody] on the face of this earth could ever figure it out."

Obviously, as to conduct that occurred prior to the July 17 hearing, "dismissal qualifies as an acquittal for double jeopardy purposes . . . [because it was] granted pursuant to a factual, as opposed to a legal, defense."  Greenwalt v. Commonwealth, 224 Va. 498, 500, 297 S.E.2d 709, 710 (1982).  After jeopardy attached at the July hearing, Courtney "possessed a valued right to have the judge decide [her] case [in] that . . . [proceeding], based upon the proof the Commonwealth could adduce [in that proceeding]." Harris v. Young, 607 F.2d 1081, 1086 (4th Cir. 1979), cert. denied, 444 U.S. 1025 (1980).  She could not be deprived of that right without a "manifest necessity."  Arizona v. Washington, 434 U.S. 497, 505 (1978).  No "manifest necessity" for the dismissal is present on this record.

Accordingly, we hold that the evidence proved that the July 17 hearing was a criminal contempt proceeding brought to consider

whether Courtney's conduct prior to July 17 violated the December 5, 1994 order. We further hold that when the trial judge at the conclusion of the evidence dismissed all pending show cause orders, the Commonwealth was barred from relitigating whether Courtney's conduct prior to July 17 was criminal contempt of court. For these reasons, we need not address the remaining issues, and we reverse the conviction.

<u>Reversed</u>.