UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Russell and AtLee
Argued by teleconference


COMMONWEALTH OF VIRGINIA

v.        Record No. 0187-20-1

REGINALD LEE JORDAN, JR.

MEMORANDUM OPINION[*] BY
COMMONWEALTH OF VIRGINIA            JUDGE RICHARD Y. ATLEE, JR.
                                   JUNE 9, 2020
v.        Record No. 0188-20-1

REGINALD LEE JORDAN, JR.


FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Frederick B. Lowe, Judge Designate

Craig W. Stallard, Assistant Attorney General (Mark R. Herring,
Attorney General, on briefs), for appellant.

Scott Michael Ehrenworth (Ali T. Sprinkle; Sprinkle & Sprinkle,
PLLC, on brief), for appellee.


Pursuant to Code § 19.2-398, the Commonwealth appeals the circuit court's order

dismissing the indictments against Reginald Lee Jordan, Jr. on double jeopardy grounds.  For the

reasons that follow, we find that the circuit court did not err in dismissing the indictments, and

we affirm.

I.  BACKGROUND

In an appeal brought by the Commonwealth, we view the historical facts in the light most

favorable to the prevailing party below, in this case Jordan, and we grant him all reasonable

inferences.  Commonwealth v. Grimstead, 12 Va. App. 1066, 1067 (1991).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Jordan was tried by jury for first-degree murder and use of a firearm in the commission of a felony. During his trial, the Commonwealth presented evidence from two witnesses, Alonzo Outten and Kelsey Garland, who both testified that they were long time acquaintances of Jordan and that he had confessed to the murder in their presence.

Jordan called Kevin Griffith as his final witness. Griffith testified that Outten and Garland, both now in jail, were trying to come up with "the best story" to get time taken off their sentences by testifying against Jordan. He explained that he heard them communicating through a vent in the jail and that they had sent messages though the "hall man." At the end of Griffith's testimony on direct examination, defense counsel asked Griffith, "You don't really know Reginald Jordan; is that correct?" Griffith responded, "No." The Commonwealth cross-examined Griffith about his criminal record, but did not ask him any questions about his relationship with Jordan.

Both parties rested, and Jordan made a motion to strike the evidence, which the trial court denied. The parties released their witnesses. The parties discussed jury instructions, and the trial court adjourned until the following day.

The next morning, before the jury was brought in, the Commonwealth presented a video to the trial court. The Commonwealth claimed that the video showed Jordan and Griffith had met a number of times in the medical center of the jail. Jordan and Griffith were talking and "fist-bumping" during the approximately five-and-a-half-hour video. The Commonwealth asked the trial court to declare a mistrial or strike Griffith's testimony, arguing that Griffith had testified he had never met Jordan and that the video demonstrated he had lied.

The trial court watched a clip of Jordan and Griffith together in the medical unit and concluded that Griffith "told a boldfaced lie to the Court" when he responded to the question of whether he really knew Jordan. The Commonwealth argued that a mistrial was the appropriate

remedy because it was too late to reopen its case and present the video evidence to the jury. Jordan argued that it was a credibility issue that should go to the jury.

The trial court granted the mistrial, and Jordan objected. The trial court specifically noted that it has "no doubt that [defense counsel] didn't have anything to do with what the Court perceived as a lie being perpetrated in this courtroom."

On October 8, 2019, Judge Melvin, who had presided over the trial, recused himself and all of the judges from that circuit. The recusal order noted that, on motion of the Commonwealth, "a mistrial was declared because the ends of public justice would otherwise be defeated." Judge Lowe was appointed to preside over the retrial.

Before the retrial, Jordan filed a motion to dismiss the indictments on double jeopardy grounds, arguing that Judge Melvin erred in granting the mistrial. During the hearing, Jordan argued that the Commonwealth should have simply reopened its case to present the video evidence to the jury. He also argued that the mistrial was improper because whether the witness had lied was an issue of credibility that should have been resolved by the jury. The Commonwealth argued that it had been too late to reopen its case and that the trial court did not abuse its discretion in granting the mistrial.

In ruling, Judge Lowe pointed to the specific language of the question: "You don't really know Reginald Jordan; is that correct?" Judge Lowe noted that literally and grammatically speaking, answering "No" to that question would mean no, that is not correct. But he also noted that people do not always speak grammatically, and therefore, this was an issue of credibility, which was "within the purview of the jury, being the trier of fact in this case." Judge Lowe concluded that the Commonwealth either could have or should have sought to reopen its case and present the video evidence to the jury. Given the less drastic alternative available to the

Commonwealth, Judge Lowe found there was not manifest necessity for a mistrial. Therefore, he granted Jordan's motion to dismiss the indictments on double jeopardy grounds.

The Commonwealth now appeals to this Court.

## II. ANALYSIS

The Commonwealth argues that Judge Lowe erred by dismissing the indictments. It argues that double jeopardy does not apply because Judge Melvin properly granted the mistrial as a manifest necessity.

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Jeopardy attaches once a defendant is placed on trial and a jury is impaneled and sworn. Kemph v. Commonwealth, 17 Va. App. 335, 340 (1993). This provision, "however, does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment." Wade v. Hunter, 336 U.S. 684, 688 (1949).

In Virginia, a trial court may discharge a jury and declare a mistrial when "there is a manifest necessity for such discharge." Code § 8.01-361. Where "manifest necessity compels a mistrial, a retrial does not violate double jeopardy principles." King v. Commonwealth, 40 Va. App. 364, 373 (2003). Absent a finding of manifest necessity, however, "the constitutional prohibition against double jeopardy entitles a defendant to the 'valued right to have his trial completed before a particular tribunal . . . .'" Id. (quoting Wade, 336 U.S. at 689).

> The reasons why this "valued right" merits constitutional protection are worthy of repetition. Even if the first trial is not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted. The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed. Consequently, as a general rule, the prosecutor is

entitled to one, and only one, opportunity to require an accused to stand trial.

Brandon v. Commonwealth, 22 Va. App. 82, 88-89 (1996) (quoting Arizona v. Washington, 434 U.S. 497, 503-05 (1978)).

To determine whether Judge Lowe properly dismissed the indictments as a violation of double jeopardy, we must first determine whether he properly concluded that a manifest necessity did not compel the mistrial.[1]

"There is no specific standard by which to determine what facts and circumstances constitute a 'manifest necessity.'" Id. at 90 (quoting Turnbull v. Commonwealth, 216 Va. 328, 335 (1975)). The analysis is fact-specific and based on the context of the situation facing the trial court. Gilliam v. Foster, 75 F.3d 881, 895 (4th Cir. 1996). Generally, the trial court has broad discretion to determine whether a manifest necessity exists, Brandon, 22 Va. App. at 90, though that discretion is not unlimited, Gilliam, 75 F.3d at 894. The burden of demonstrating a manifest necessity falls on the prosecutor. Brandon, 22 Va. App. at 91.

Here, Judge Lowe determined that whether Griffith lied was an issue of credibility for the jury, as the fact-finder, to resolve. We agree. The question here was a compound question: "You don't really know Reginald Jordan; is that correct?" Judge Lowe correctly noted that Griffith's negative response could be interpreted in several ways. Grammatically speaking, Griffith could have been saying no, that was not a correct statement. Or, as the Commonwealth argued and Judge Melvin concluded, Griffith could have been saying no, he did not know Jordan. The Commonwealth did not object to the question or ask any questions on

---

[1] Jordan argues that "Judge Lowe's opinion about the appropriateness of a mistrial is not reviewable in a Commonwealth appeal." The Commonwealth, however, *is* permitted to appeal the dismissal of an indictment on double jeopardy grounds. In order to resolve the double jeopardy issue, we must first determine whether the mistrial was properly granted. Therefore, the "appropriateness" of the mistrial is properly before this Court.

cross-examination to either clarify or test the veracity of Griffith's answer. Additionally, even if Griffith's response did refer to the first part of the question, it is still unclear what "really know" meant. Griffith could have meant he had never met Jordan, as the Commonwealth argued. Or he could have simply meant that he had met Jordan, but did not "really know" him.

Given the ambiguities and multiple possible interpretations, the issue was one of credibility.[2] "[D]ecisions regarding the credibility of the witnesses and the weight of the evidence are matters left solely to the fact finder below, in this case the jury." Blevins v. Commonwealth, 63 Va. App. 628, 634 (2014).

Moreover, contrary to the position of the Commonwealth at trial, there *were* narrower alternatives available. As the Commonwealth conceded before this Court, there was nothing to prevent the Commonwealth from seeking to reopen its case and present the video as impeachment evidence to challenge Griffith's testimony and credibility. See Minor v. Commonwealth, 16 Va. App. 803, 805 (1993) (holding that the trial court has discretion to allow a party to reopen a case even after all of the testimony has been concluded and the witnesses have been released). Or, the trial court simply could have allowed the case, as presented, to go to the jury and, thus, allowed the jury to assess the credibility of Griffith's testimony. The availability of narrower alternatives demonstrate that there was not the "high degree" of necessity required to prove a manifest necessity. See Washington, 434 U.S. at 506.

Accordingly, we conclude that Judge Lowe correctly determined that a mistrial was not manifestly necessary. Consequently, Judge Lowe did not err in dismissing the indictments as a violation of double jeopardy.

---

[2] Importantly, Judge Melvin specifically found that defense counsel "didn't have anything to do with what the [trial c]ourt perceived as a lie being perpetrated."

III. CONCLUSION

For the foregoing reasons, we affirm the decision of the circuit court.

<u>Affirmed.</u>