UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Malveaux and Athey
Argued by videoconference

GREG EUGENE MINITEE, A/K/A
  GREGORY EUGENE MINITEE

v.      Record No. 1054-19-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE CLIFFORD L. ATHEY, JR.
DECEMBER 8, 2020

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
W. Reilly Marchant, Judge[1]

Lauren Whitley Deputy Public Defender, for appellant.

Sharon M. Carr, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Greg Eugene Minitee ("Minitee") appeals multiple convictions stemming from the

robbery of a convenience store in the city of Richmond on April 19, 2018, and April 23, 2018.

On appeal, Minitee contends that the trial court erred when it:  (1) denied his motion to dismiss

pursuant to the double jeopardy provision of the United States and Virginia Constitutions,

(2) denied his motion to dismiss in violation of his statutory and constitutional speedy trial rights,

and (3) denied his motion to recuse the trial judge for alleged bias.  We agree that under the

unique circumstances presented, the trial court erred by denying Minitee's motion to dismiss

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Judge W. Reilly Marchant ("trial judge") served as presiding judge in both the initial
jury trial which ended in a mistrial and the subsequent jury trial on the same indictments which
resulted in the convictions appealed in this case.  Chief Judge Joi Jeter Taylor ("chief judge")
declared the mistrial at issue in this appeal.

based on his constitutional right against being placed twice in jeopardy and, accordingly, we reverse his convictions and dismiss the indictments.

BACKGROUND

Minitee was charged with two counts of robbery and with the use of a firearm in connection with both charges. On August 20, 2018, the trial judge granted the Commonwealth's motion to join all the charges for a one-day jury trial which was to be held on Friday, November 30, 2018. Prior to that date, the trial judge ruled on various motions *in limine* filed by the parties. As a result of the first day of trial running longer than anticipated, multiple witnesses for the Commonwealth and Minitee were not called to testify. The trial judge subsequently adjourned at 6:00 p.m. on the first day, intending to reconvene to complete the jury trial on the following Monday, December 3, 2018.

In the interim, on Sunday, December 2, 2018, at 6:47 p.m., the trial judge's secretary advised the Commonwealth and Minitee's counsel by email that he would be unable to return to complete the jury trial the following day, stating:

> Hello, unfortunately [the trial judge] injured his back and will be unable to appear in Court to continue the jury trial Monday morning. Therefore, a mistrial will have to be declared. [The chief judge] will take the bench at 10am and declare the mistrial and release the jurors. [The trial judge] hates to have [to] do this and he apologizes profusely. He realizes the problems this may cause, but he is on medication and there is just no way for him to come in to continue the jury. I am sorry for the inconvenience.

The following day, the chief judge, acting *sua sponte* for the trial judge, declared a mistrial citing as justification the trial judge's unforeseen medical issue. The following colloquy occurred prior to the formal declaration of the mistrial:

> [CHIEF JUDGE]: And before we bring the jurors in, you all have been informed by the clerk of the circumstance that is that [the trial judge] has a physical issue and could not conduct the trial today.

- 2 -

[COMMONWEALTH]:  Yes.

[CHIEF JUDGE]:  And so he is asking to declare a mistrial. And is there anything that you all would want to put on the record before we—

[COMMONWEALTH]:  The Commonwealth would be objecting.  The Commonwealth's witnesses were present on Friday all of whom were recognized for today.  So the Commonwealth would have been prepared to go forward today as scheduled out of court on Friday.

[CHIEF JUDGE]:  Thank you, ma'am.  Defense.

[DEFENSE COUNSEL]:  Likewise, the defense would object to the mistrial in this case.  Our witnesses likewise were recognized – They were subpoenaed and recognized to be here today for this case, Judge.  We also would like to put on the record that we did have a witness come from out of state, a potential sentencing witness, who is going to have to go back to New Jersey . . . .

In overruling their objections to the proposed mistrial, the chief judge stated:

Well, obviously, if [the trial judge] could avoid having this circumstance, he certainly would.  And so while the Court appreciates both of your comments on the record, and I understand that you all were ready to proceed today, it's just that an unfortunate circumstance has occurred, and [the trial judge] will not be able to carry forward with the trial today.

After dismissing the jury, the chief judge announced:  "All right.  The Court will declare a mistrial in those matters with the exceptions of counsel being noted."

On December 13, 2018, Minitee was denied bond and objected to resetting a new trial on both double jeopardy and speedy trial grounds.  Over his objection, the court reset the cases for a second jury trial before the original trial judge to commence on April 17, 2019.

On March 15, 2019, Minitee moved to dismiss the still-pending charges on double jeopardy grounds.  Argument was heard by the trial judge on April 3, 2019.  Minitee contended that the trial judge's prior injury alone did not create a "manifest necessity" requiring the previous mistrial and that other, less drastic alternatives should have been considered before the

- 3 -

chief judge declared a mistrial. Minitee further contended that the unexplored alternatives to the mistrial included continuing the jury trial to a time when the trial judge was available or when the chief judge or another judge could have presided over the trial pursuant to Code § 19.2-154. The Commonwealth, after acknowledging its previous objection to the mistrial, argued that the trial judge's injury amounted to the requisite manifest necessity justifying declaring the *sua sponte* mistrial without exploring less drastic alternatives. The trial judge denied Minitee's motion to dismiss the indictments based on double jeopardy.

Minitee subsequently filed an additional motion to dismiss based on speedy trial grounds and a motion for the trial judge to recuse himself in the case. The trial judge denied both of those motions.

On April 24-25, 2019, a second trial before a newly empaneled jury was completed over Minitee's continuing objections. The jury in the second trial found Minitee guilty on all charges and recommended a total sentence of twenty years in prison for the four convictions. Minitee was sentenced consistent with the jury's recommendation. This appeal followed.

ANALYSIS

Minitee contends that the trial court initially erred in declaring a mistrial *sua sponte* over his objection without considering other less drastic alternatives. He further argues that, as a result of the failure to at least consider other alternatives to the mistrial, the mistrial was not manifestly necessary and was an abuse of discretion. Finally, Minitee contends that since the *sua sponte* mistrial was declared in error, his constitutional double jeopardy protections were violated when the trial court subsequently denied his motion to dismiss and conducted a second jury trial for the same alleged crimes over his objection.[2]

---

[2] The Commonwealth argues that Minitee did not object below with sufficient specificity to preserve for appeal his challenge to the trial court's declaration of a *sua sponte* mistrial. See Rule 5A:18. At trial, the Commonwealth first objected to the mistrial stating that its witnesses

I.  Manifest Necessity

"In reviewing a double jeopardy claim, . . . this Court shall conduct a *de novo* review." Davis v. Commonwealth, 57 Va. App. 446, 455 (2011).  After the jury is sworn, "the court may discharge the jury when it appears that they cannot agree on a verdict or that there is *manifest necessity* for such discharge."  Code § 8.01-361 (emphasis added).  "In determining whether manifest necessity exists, a trial court is vested with broad discretion."  Prieto v. Commonwealth, 278 Va. 366, 389 (2009) (quoting Smith v. Commonwealth, 239 Va. 243, 267 (1990)).  "Absent a showing that the circuit court abused its discretion by granting a mistrial, this Court will not disturb the circuit court's ruling on appeal."  Id. (citing Cheng v. Commonwealth, 240 Va. 26, 40 (1990)).

The Fifth Amendment to the United States Constitution provides that no person "shall be subject for the same offense to be twice put in jeopardy of life or limb."  U.S. Const. amend. V. The same principle is enunciated in Article I, § 8, of the Virginia Constitution.  "Double jeopardy protection is implicated even though the trial may have terminated without a verdict." Brandon v. Commonwealth, 22 Va. App. 82, 88 (1996).  "The law is well settled 'that jeopardy means the danger of conviction.'"  Courtney v. Commonwealth, 23 Va. App. 561, 567 (1996) (quoting Rosser v. Commonwealth, 159 Va. 1028, 1036 (1933)).

At the core of the double jeopardy prohibition is "the defendant's 'valued right to have his trial completed by a particular tribunal.'"  Arizona v. Washington, 434 U.S. 497, 503 (1978) (quoting United States v. Jorn, 400 U.S. 470, 484 (1971) (plurality opinion)); see Oregon v.

---

were present and that it was ready to move forward with the trial.  Minitee then expressly objected to the mistrial on the ground that he was also prepared to go forward that day.  Because Minitee presented a less drastic alternative to the mistrial in his objection, the decision regarding whether to declare the *sua sponte* mistrial was squarely before the trial court.  As such, we hold that Minitee is not precluded by Rule 5A:18 from raising this argument on appeal.

- 5 -

Kennedy, 456 U.S. 667, 673 (1982) (interpreting "a particular tribunal" to equal the first jury empaneled to try a defendant).

The United States Supreme Court has detailed the importance of this "valued right." Washington, 434 U.S. at 503 (quoting Kennedy, 456 U.S. at 673).

> Even if the first trial is not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted. The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed.

Id. at 503-04 (footnotes omitted). However, "[t]he Double Jeopardy Clause . . . does not guarantee to the defendant that the State will vindicate its societal interest in the enforcement of the criminal laws in one proceeding." Kennedy, 456 U.S. at 672. The "purpose of law to protect society from those guilty of crimes frequently would be frustrated by denying courts the power to put the defendant to trial again." Id.

This determination as to whether subsequent prosecutions are barred by double jeopardy protections turns on whether the record supports a ruling that the court's discharge of the jury was a manifest necessity. Code § 8.01-361; see Washington, 434 U.S. at 505. In evaluating whether a factual scenario constitutes manifest necessity, "Mr. Justice Story's classic formulation of the test has been quoted over and over again to provide guidance." Washington, 434 U.S. at 506; see also Allen v. Commonwealth, 252 Va. 105, 109 (1996) (utilizing Justice Story's analysis defining "manifest necessity" for Fifth Amendment double jeopardy analysis and Code § 8.01-361, which allows the trial court to discharge a jury in cases of "manifest necessity").

The test provides initially that "necessity" cannot "be interpreted literally . . . [because] we assume that there are degrees of necessity and we require a 'high degree' before concluding

that a mistrial is appropriate." Washington, 434 U.S. at 506. In addition, the burden rests with the Commonwealth to demonstrate that "manifest necessity" exists for any mistrial declared over the objection of the defendant, and any doubt as to the validity of the trial court's declaration of a mistrial should be resolved in favor of the accused. Brandon, 22 Va. App. at 91 (quoting Washington, 434 U.S. at 505-06).

A trial judge must also consider all reasonable alternatives to the declaration of a mistrial "to assure that, taking all the circumstances into account, there was a manifest necessity for the *sua sponte* declaration of [the] mistrial." Jorn, 400 U.S. at 487; see also Gilliam v. Foster, 61 F.3d 1070 (4th Cir. 1995) (holding that the critical inquiry is whether less drastic alternatives were available to the court); Harris v. Young, 607 F.2d 1081, 1085 (4th Cir. 1979) ("[I]f less drastic alternatives than a mistrial were available, they should have been employed to protect the defendant's interest in promptly ending the trial.").

Because the protection against double jeopardy is a constitutional right, a trial judge "must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." Washington, 434 U.S. at 514 (quoting Jorn, 400 U.S. at 486). Specifically, a trial court should consider the possibility of a *continuance* before abruptly declaring a mistrial and discharging the jury. Jorn, 400 U.S. at 487; see also United States v. Shafer, 987 F.2d 1054 (4th Cir. 1993) (holding that an abuse of discretion occurs if the trial judge fails to fully consider all alternatives, including a continuance, before declaring a mistrial).

In this case, both the Commonwealth and the defendant expressly objected to the mistrial when declared, on the grounds that both parties were prepared to go forward that day. Since the Commonwealth also objected to the mistrial, with the exception of the email sent by the trial

- 7 -

judge's secretary, nothing in the record permits this Court to evaluate whether the trial court considered any less severe alternatives prior to declaring the mistrial. The Commonwealth now contends, in hindsight, that the *sua sponte* declaration of the mistrial by the chief judge met the standard of "manifest necessity" due to the trial judge's intimate knowledge of the procedural history in the case, including his having ruled on the pretrial motions filed by both parties and the motions *in limine* heard on the morning of the first trial. It further contends that because no transcript of the November 30, 2018 proceedings could have been produced on December 3, 2018, the chief judge or any judge attempting to preside in the trial judge's stead would not have been able to complete the trial. The Commonwealth argues that these facts support the conclusion that a continuance was not viable.

The record reflects that the chief judge declared the mistrial at the trial judge's request following an unforeseen serious injury that led to the trial judge's inability to continue to preside over the first jury trial. The trial court initially asked the parties if they would like to put anything on the record before it declared a mistrial and dismissed the jury. Since both the Commonwealth and Minitee objected to the mistrial on the grounds that they were ready to proceed and had witnesses ready to testify on that day, the court was on notice that the necessity of the mistrial was an issue. Additionally, the Commonwealth objected to the *sua sponte* mistrial and therefore was not in a position to help make a record reflecting that other less severe alternatives were untenable and the *sua sponte* mistrial was "manifestly necessary" at the time it was declared. The chief judge also made no such findings at the time. As a result, there is nothing in the record before this Court, that clearly indicates what, if any, less drastic alternatives were considered by the court prior to the *sua sponte* declaration of this mistrial over the objections of Minitee and the Commonwealth. See Turner v. Commonwealth, 2 Va. App. 96, 99

- 8 -

(1986) ("[I]t is axiomatic that an appellate court's review of the case is limited to the record on appeal.").

Jorn requires a reviewing court to assure that the trial judge engaged in a "scrupulous exercise of judicial discretion" in the declaration of a *sua sponte* mistrial over the objection of a criminal defendant. Jorn, 400 U.S. at 485. This involves determining whether the record indicates that the trial judge carefully considered alternatives and did not act in an abrupt, erratic or precipitate manner. Id. at 487; Washington, 434 U.S. at 514-15. The review must make clear that the trial judge devoted time and thought to less drastic alternatives when weighed against a defendant's valued interest in "being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." Jorn, 400 U.S. at 486.

The record in this case, at the time the mistrial was declared, is bereft of any evidence clearly reflecting that the trial court considered any less drastic alternatives,[3] and as a result, the record does not support a ruling that the mistrial was manifestly necessary at the time it was declared. As such, despite our acknowledgment of the difficult situation faced by the judges and the parties at the time the mistrial was declared, we are left with no other alternative but to hold

---

[3] One such alternative, as Minitee correctly contends, is the substitution of another judge in the circuit for the trial judge as proscribed by Code § 19.2-154. Code § 19.2-154 provides that:

> If by reason of death, sickness or other disability the judge who presided at a criminal jury trial is unable to proceed with and finish the trial, another judge of that court or a judge designated by the Chief Justice of the Supreme Court or by a justice designated by him for that purpose, may proceed with and finish the trial or, in his discretion, may grant and preside at a new trial. . . . Before proceeding with the trial or performing such duties, such judge shall certify that he has familiarized himself with the record of the trial.

that the trial court abused its discretion when it declared a mistrial over the objection of Minitee without detailing its consideration of less drastic alternatives for the record.

## II.  Motion to Dismiss

After finding that the declaration of a *sua sponte* mistrial in this case, over Minitee's objection, was an abuse of discretion, we review *de novo* the trial court's denial of Minitee's motion to dismiss on double jeopardy grounds.  See Davis v. Commonwealth, 57 Va. App. 446, 455 (2011).

It is well settled that the prosecution bears the burden of demonstrating that the trial court's discharge of the jury was manifestly necessary.  Code § 8.01-361; see Washington, 434 U.S. at 505.  Since a defendant has a protected interest in "having the trial concluded in a single proceeding," we must resolve any doubt as to "manifest necessity" in favor of the accused. Washington, 434 U.S. at 503.  Based on our previous determination that the *sua sponte* mistrial during Minitee's first trial was granted in error, Minitee was twice placed in jeopardy in violation of the United States and Virginia Constitutions when he was tried on the same indictments before a different jury during his second trial.  For that reason, we hold that the trial court erred when it denied Minitee's motion to dismiss the same indictments instituted against him a second time on double jeopardy grounds.

### CONCLUSION

For the foregoing reasons, the convictions are reversed and the indictments dismissed in accordance with this opinion.[4]

Reversed and dismissed.

_____

[4] The reversal and dismissal renders Minitee's remaining assignments of error moot, and we do not address them.