Present:  Carrico, C.J., Compton, Stephenson, Lacy, Hassell, and Keenan, JJ., and Poff, Senior Justice

OLAN CONWAY ALLEN

v.  Record No. 951681

COMMONWEALTH OF VIRGINIA

OPINION BY
SENIOR JUSTICE RICHARD H. POFF
June 7, 1996

FROM THE COURT OF APPEALS OF VIRGINIA

We granted a convicted defendant this appeal limited to the issues raised in the following assignment of error:

> The Court of Appeals erred in finding that the appellant, Olan C. Allen, waived his double jeopardy objections and by affirming the trial court's order that the appellant be tried again, after the jury had been empaneled, reached a verdict, recommended a sentence and had been dismissed by the trial court.

On February 23, 1993, a jury convicted Allen of breaking and entering in violation of Code § 18.2-91 and grand larceny in violation of Code § 18.2-95 and fixed his punishment at "confinement in jail for 12 months" and at "a term of imprisonment for 2 years."  The Circuit Court of Albemarle County dismissed the jury and continued the case for sentencing.  The next day, the Commonwealth's Attorney moved for a mistrial on the ground that one of the jurors was a non-resident of the county.

The trial court's letter opinion indicates that "the defendant concurred that there was an improper jury but requested that the case be dismissed on the basis that jeopardy had already attached and the case could not be retried."  The court overruled the defendant's objection to a new trial, sustained the Commonwealth's motion for a mistrial, ordered the case continued to the next criminal docket call, and remanded the defendant to jail.

The defendant's second trial ended in a hung jury and a second declaration of mistrial. The trial court ruled that "the defendant has not waived his right to object to a [third] trial . . . based on the double jeopardy clause" but that "a third trial . . . will not amount to double jeopardy".

At the third jury trial, a police officer testified that Allen had refused to make a statement to the police. Invoking the Fifth Amendment guarantee against self-incrimination, the defendant moved for a mistrial. While the court made a finding for the record that the testimony was "inadvertent and not a deliberate attempt by the Commonwealth to prejudice the Defendant", the court granted the defendant's motion for mistrial, denied his objection to a fourth trial, and ordered that the case be reset for trial at the next criminal docket call.

At the fourth trial, a jury convicted Allen of both offenses charged in the indictments and fixed his punishment at "8 years imprisonment" and at "5 years imprisonment." The trial court confirmed the convictions by order entered October 4, 1993 and, by final judgment entered December 6, 1993, imposed the sentences fixed by the jury.

On appeal to the Court of Appeals of Virginia, the defendant contended, inter alia, that "the indictments should have been dismissed on double jeopardy grounds". Addressing that contention, the Court held:

> By agreeing that the jury was improperly constituted and that the verdicts were invalid, the appellant invited the trial judge to set aside the verdicts. We hold that in doing so, the defendant waived his double jeopardy protections.

Allen v. Commonwealth, 20 Va. App. 630, 636, 460 S.E.2d 248, 251 (1995).

In effect, the Court of Appeals upheld the trial court's several orders rejecting the defendant's double jeopardy claims. We disagree with that holding.

## I DOUBLE JEOPARDY

The double jeopardy clause of the Fifth Amendment of the Constitution of the United States, made applicable to the states by the due process clause of the Fourteenth Amendment, Benton v. Maryland, 395 U.S. 784 (1969), provides that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb"; accord Va. Const. art. I, § 8.  That guarantee was grounded on the "universal maxim of the common law of England".  4 St. George Tucker, Blackstone's Commentaries 335 (1803).  The common law of England "not only prohibited a second punishment for the same offence, but it went further and forbid a second trial for the same offence, whether the accused had suffered punishment or not, and whether in the former trial he had been acquitted or convicted."  Ex parte Lange, 85 U.S. (18 Wall.) 163, 169 (1873).

The reasoning underlying this principle of Anglo-American jurisprudence is that

the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

Green v. United States, 355 U.S. 184, 187-88 (1957).

Since ratification of our Bill of Rights, the English and

American rules have differed only in part. Under the English rule, reprosecution is barred only after final judgment is entered in the first trial. 11 Halsbury's Laws of England, Criminal Law, Evidence, and Procedure ¶ 242 (4th ed. 1976). Under the American rule, jeopardy attaches when an accused is put to trial before a jury. Kepner v. United States, 195 U.S. 100, 128 (1904). The accused has a "valued right to have his trial completed by a particular tribunal", Wade v. Hunter, 336 U.S. 684, 689 (1949), that is, "the right . . . to have his trial completed before the first jury empaneled to try him", Oregon v. Kennedy, 456 U.S. 667, 673 (1982). "[A] verdict of acquittal is final, ending a defendant's jeopardy, and even when 'not followed by any judgment, is a bar to a subsequent prosecution for the same offence.'" Green, 355 U.S. at 188, (quoting United States v. Ball, 163 U.S. 662, 671 (1896)).

That bar is activated by a plea of autrefois convict as well as a plea of autrefois aquit. United States v. Scott, 437 U.S. 82, 87 (1978). In our opinion, a verdict of conviction, even when "not followed by any judgment", is also "final, ending a defendant's jeopardy". Here, the jury rendered a verdict of conviction fixing the penalties to be imposed. That verdict was never confirmed by final judgment. Instead, based upon a conclusion that the jury, because it included one member who was a non-resident of the county, was unqualified to render that verdict, the trial court declared a mistrial and overruled Allen's double jeopardy objection.

In an early case in which a trial judge had declared a

mistrial on his own motion, Mr. Justice Story, writing for the Supreme Court, held that trial judges could declare mistrials "whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." United States v. Perez, 22 U.S. (9 Wheat.) 579, 580 (1824). In accord with that holding, the General Assembly enacted a statute providing that "the court may discharge the jury when it appears . . . that there is manifest necessity for such discharge." Code § 8.01-361.

That statute must be read in conjunction with Code § 8.01-352, entitled "Objections to irregularities in jury lists or for legal disability; effect thereof." Code § 8.01-352(B) provides in pertinent part as follows:

> [U]nless it appears that the . . . irregularity or disability be such as to probably cause injustice in a criminal case to the Commonwealth or to the accused, . . . then such irregularity or disability shall not be cause for summoning a new panel or juror or for setting aside a verdict or granting a new trial.

Although the defendant agreed that the jury was not properly constituted, Allen claimed no danger of "injustice" related to the juror's residence; and the prosecutor, who had won a verdict of conviction and who was required to "shoulder the burden of justifying the mistrial if he is to avoid the double jeopardy bar", Arizona v. Washington, 434 U.S. 497, 505 (1978), makes no claim of injustice to the Commonwealth.

Citing Thurman v. Commonwealth, 107 Va. 912, 915, 60 S.E. 99, 100 (1908) (objection that juror resides outside court's

jurisdiction comes too late after conviction), the Commonwealth concedes that "there was no manifest necessity for ending Allen's first trial". We agree. It follows that the trial court erred in granting the motion for mistrial unless, as the Court of Appeals held, "the defendant waived his double jeopardy protections."

## II WAIVER

As the Commonwealth says on brief, "[w]hen a defendant has moved for a mistrial or consents to its declaration, the double jeopardy clauses generally will not bar his retrial."[*] The Commonwealth contends that "Allen expressly agreed that the judge should vacate the jury verdict due to the juror's lack of competency." In support of that contention, the Commonwealth cites the order entered by the trial court rejecting Allen's motion to deny a third trial and the court's letter opinion, stating that "the defendant concurred that there was an improper jury but requested that the case be dismissed on the basis that jeopardy had already attached and the case could not be retried." The Commonwealth also relies upon the reason assigned by the Court of Appeals in support of its waiver ruling that "[b]y agreeing that . . . the verdicts were invalid, the appellant invited the trial judge to set aside the verdicts."

As we read the record, Allen never consented to the prosecutor's motion for mistrial. That motion had multiple objectives, viz., vacation of the penalty verdict rendered by a

---

[*] See United States v. Jorn, 400 U.S. 470, 484-85 (1971) (general rule). But see United States v. Dinitz, 424 U.S. 600, 611 (1976) (general rule does not apply when conduct by judge or prosecutor was "intended to provoke mistrial requests").

jury mistakenly believed to be unqualified, the assembly of a new jury, and a new trial by that jury. Allen, laboring under the same misconception, "concurred that there was an improper jury". Nowhere does the record before us show that Allen ever agreed that "the verdicts were invalid"; or that the judge should "set aside the jury verdicts"; or that there should be a new trial by a new jury. Rather, as the letter opinion indicates, he merely "requested that the case be dismissed on the basis that jeopardy had already attached and the case could not be retried."

"[W]aiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege", Johnson v. Zerbst, 304 U.S. 458, 464 (1938); accord Stanley's Cafeteria v. Abramson, 226 Va. 68, 74, 306 S.E.2d 870, 873 (1983); Peterson v. Commonwealth, 5 Va. App. 389, 396, 363 S.E.2d 440, 444 (1987); and with respect to fundamental constitutional rights, "courts indulge every reasonable presumption against waiver", Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 393 (1937).

In the same letter opinion upon which the Commonwealth relies, the trial court ruled that Allen had "preserved the objection to a [second] trial . . . by noting his objection on the record" and that "the defendant has not waived his right to object to a [third] trial . . . based upon the double jeopardy clause". We agree with that ruling, and we will reverse the judgment of the Court of Appeals affirming the judgment orders entered by the trial court at the fourth trial on October 4, 1993 and December 6, 1993.

Rejecting the defendant's suggestion that "the charges [be]

dismissed", but granting his prayer that "the case [be] remanded for resentencing", we will return this case to the Court of Appeals with the following instructions. The Court of Appeals shall remand the case to the trial court. The trial court shall reinstate and confirm the verdict entered by the jury on February 23, 1993 and proceed with the imposition of sentence and entry of final judgment.

Reversed and remanded.