COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Willis and Clements
Argued at Alexandria, Virginia


DARRELL WASHINGTON
                                            OPINION BY
v.   Record No. 0881-00-4   CHIEF JUDGE JOHANNA L. FITZPATRICK
                                         MARCH 27, 2001
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                   William T. Newman, Jr., Judge

            Janell M. Wolfe for appellant.

            Virginia B. Theisen, Assistant Attorney
            General (Mark L. Earley, Attorney General,
            on brief), for appellee.


     Darrell Washington (appellant) was convicted in a jury

trial of robbery, in violation of Code § 18.2-58, and use of a

firearm while committing a robbery, in violation of Code

§ 18.2-53.1.  On appeal, he contends (1) his second trial

violated the Fifth Amendment's Double Jeopardy Clause[1] and (2)

the evidence was insufficient to prove his guilt.  We agree that

the double jeopardy prohibition bars his second trial and

reverse and dismiss his convictions.

---

     [1] The Commonwealth contends appellant failed to object to
the trial court's declaration of a mistrial and, thus, is barred
by Rule 5A:18 from raising the double jeopardy issue on appeal.
However, the record clearly indicates that appellant objected to
the trial court's sua sponte declaration of a mistrial and that
both the trial court and Commonwealth's attorney were aware that
appellant was objecting on double jeopardy grounds.

On December 15, 1999 appellant's case was called for trial before the Honorable Paul Sheridan. Twenty people were called as prospective jurors and seated in the jury box. When Juror No. 5 approached the jury box, he informed the trial judge, "I'm excused for tomorrow, Your Honor." The court asked counsel if the case would carry over into the next day, and appellant's counsel indicated that it was very possible it might do so. The court then inquired if anyone else was excused for the following day. Four of the prospective jurors noted they were excused for the following day. Nevertheless, all the prospective jurors were called for voir dire. Another juror indicated he would have a problem if court lasted later than 5:00 p.m. on that day.

Prior to either counsel commencing voir dire, the court once again inquired, "How many of you have been excused for tomorrow?" and had the jurors keep their hands raised so that counsel could see them. After both counsel finished voir dire, the court again asked "those who are excused tomorrow, one more time, put your hands up. Counsel observe." Defense counsel informed the court that she would not use her strikes based upon availability, and the court indicated that appellant was not required to use strikes in that manner. Counsel also stated, "I think, you know, the lateness of this trial starting, that there is a good chance that it will go into tomorrow." The court responded, "I'm going to wait and see."

After the strikes were completed, but prior to the jury being sworn, one juror stated that she had to teach a class at 6:00 p.m. and needed to leave by 5:30 p.m. The trial judge agreed to make sure the juror was excused on time. Another juror stated, "I was excused for tomorrow." The court responded:

> THE COURT: "I will get to that now. We'll see what we do with it."
>
> [The jury was sworn immediately after the court's comment.]
>
> THE CLERK: Please stand and raise your right hands.
>
> (The jury panel was sworn as follows:)
>
> THE CLERK: So you and each of you solemnly swear to well and truly try and true deliverance make between the Commonwealth of Virginia and the defendant at the bar whom you shall have the charge [sic] and a true verdict render thereon according to the law and the evidence so help you God?

The trial court, after having the jury panel sworn, sua sponte determined a need for alternates.

> THE COURT: Now, for one more time, hands that are excused tomorrow. All right. We have one juror excused for tomorrow. We have one juror who I have told [sic] is going to make her teaching commitment at 6 p.m. tonight.
> Do you want alternates?
> Hearing no immediate answer, I'm going to answer the question for myself. Yes.

Only two prospective jurors were available who were not a part of the twenty previously called. Thus, the court proposed

adding two of the previously stricken jurors and allowing each side one strike to select two alternates. At this point, the jury and remaining prospective jurors were removed from the courtroom. The appellant and Commonwealth objected to any procedure to choose an alternate that included previously stricken jurors.[2] Appellant also objected to selecting any alternate jurors at this stage because the alternates would know they were designated as such. Appellant indicated the court knew enough jurors might not be present and should have continued the case. The Commonwealth and appellant further objected to the court's suggestion to seat the two remaining prospective jurors and allow only the appellant to strike one. The following colloquy occurred:

> MR. HUDGINS [The Commonwealth's Attorney]: Again, I have the same position because now I'm basically out of a strike, and she is left with the potential of picking who is going to be the alternate.
>
> THE COURT: 8.01-360 says, In no event shall alternates be told they are alternates.
>
> MR. HUDGINS: I have --
>
> THE COURT: You are both objecting?
>
> MR. HUDGINS: Well, I'm objecting not so much because the other person is going to know they are the alternate, but because I don't have a decision in who gets to be the alternate.

---

[2] We note that the method of selection of alternates in a jury trial is set out in Code § 8.01-360.

THE COURT:  That's a mistrial.

MS. WOLFE:  Your Honor, and I'm going to say this --

THE COURT:  Now you are going to have jeopardy.

MS. WOLFE:  We have jeopardy, but the Court --

THE COURT:  The Commonwealth won't agree to the cure.

MR. HUDGINS:  There wasn't a jury sworn.

THE COURT:  No, sir.

MS. WOLFE:  The jurors were sworn.

THE COURT:  I tried to get this case tried and tried to get it done, but we are going to fight over this. And you want your statutory right.  You want your statutory right.
We don't have sufficient jurors to have a replacement for the juror sworn.
That's a mistrial.

MS. WOLFE:  Thank you, Your Honor.[3]

---

[3] The Commonwealth argues that appellant (through his attorney Ms. Wolfe) did not object to the trial judge's sua sponte declaration of a mistrial when Ms. Wolfe stated, "Thank you, Your Honor."  Thus the Commonwealth asserts that appellant waived his right to argue that the double jeopardy prohibition barred his retrial.  However, "'[W]aiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege' and with respect to fundamental constitutional rights, 'courts indulge every reasonable presumption against waiver.'"  Allen v. Commonwealth, 252 Va. 105, 111, 472 S.E.2d 277, 280 (1996) (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938); Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 393 (1937)) (further citations omitted).  Waiver can be either express or implied.  See United States v. Ham, 58 F.3d 78, 83 (1995).  A defendant impliedly consents to a mistrial if the defendant had an opportunity to object to the mistrial but failed to do so in

        MS. HUDGINS:  I'm going to ask, Your
Honor -- could we place it on the docket for
another day?

        THE COURT:  Well, of course that's what
we are going to do.

        MS. WOLFE:  Well, I think there's
really an argument about --

        THE COURT:  <u>Now she's going to claim
that jeopardy attaches</u>.

        MS. WOLFE:  Well, it did attach because
the jurors were sworn.
        We will get the transcript --

        THE COURT:  Now she is going to move to
dismiss on double jeopardy grounds.
        You're objecting to my attempted cure
to get a jury in the box, and you have a
right to do that, and you have statutory
authority for it.

(Emphasis added).

---

a timely manner.  <u>See</u> <u>id.</u>  Thus, an appellant must object to the <u>sua</u> <u>sponte</u> declaration of a mistrial before the trial judge discharges the jury.  <u>See</u> <u>id.</u>; <u>see also</u> <u>United States v. Gantley</u>, 172 F.3d 422, 428-29 (1999); <u>United States v. Palmer</u>, 122 F.3d 215, 218-19 (1997).  We must look at the totality of the circumstances to determine if appellant waived his constitutional rights.  <u>See</u> <u>id.</u>  In the instant case, appellant attempted to note his objection to the mistrial immediately following the judge's initial statement, "that's a mistrial." The judge clearly knew the grounds for appellant's objection, as his interaction with Ms. Wolfe indicates.  Appellant did not say, "Thank you, Your Honor," until the judge stated a second time, "[t]hat's a mistrial."  After two declarations of a mistrial, appellant continued to object to the mistrial.  Only after appellant attempted to object twice did the judge call the jury back into the courtroom, inform the jury of the mistrial, and discharge the jury from service.  Therefore, we find, considering the totality of the circumstances, that appellant's objection to the <u>sua</u> <u>sponte</u> declaration of a mistrial outside the presence of the jury was timely because it was made before the jury was discharged from service and immediately upon the judge indicating that he was going to declare a mistrial.

The court then recalled the jury and discharged them from service. After the jury left the courtroom, the trial judge heard additional argument:

> THE COURT: The alternative, facing a double objection, each with a correct legal basis, was to try the case and see if it got in and done by 6 o'clock tonight.
> It is 12:18 on the Court's clock. I'm told there were seven or eight Commonwealth witnesses. Both attorneys imply that they couldn't do that.
> Therefore, rather than make this jury wait around all day and see if it can be done properly, the mistrial for the inability to have 12 jurors hear and decide this case properly is equivalent to a sick juror or a missing juror, taking us under the 12.
> Pick a new date.
> Sorry to do that to all of the witnesses and the victim and everybody else, but that's --
>
> MR. HUDGINS: Your Honor, may I just be heard?
>
> THE COURT: -- required by Virginia law.
>
> MR. HUDGINS: Your Honor, may I be heard with respect to the issue of whether there is a mistrial or not?
> My understanding is, Your Honor, we were about -- I don't recall -- you correct me if I'm wrong -- when we picked our 12 whether or not the clerk actually swore them in.
>
> THE COURT: The second oath was given.
>
> MR. HUDGINS: Because I thought we were about to pick --
>
> THE COURT: The second oath was given. The jury was sworn.
> It is very important constitutionally. The jury was sworn. There was no objection

- 7 -

to swearing them.  The Court went ahead with the clerk in the usual process.  No comment was made.  That jury was sworn.

MR. HUDGINS:  Well, I guess, Your Honor, just so the Court understands I didn't understand that because I thought we were about to pick an alternate.
I couldn't see how swearing the jury --

THE COURT:  The expectation of the selection of alternates did not make it unclear that the second oath was being given.

Appellant's trial was rescheduled for March 6, 2000 before another judge.[4]  Prior to commencing jury selection, appellant moved to dismiss his case on double jeopardy grounds.  The trial court denied appellant's motion, stating that while he believed the original trial should have been continued when the judge was informed that the jury member was excused the following day, the granting of a mistrial and the determination of manifest necessity are matters left exclusively to the discretion of the trial judge at the time and, thus, he would not second guess the original trial judge's decision.  Appellant was tried and convicted of robbery and use of a firearm while committing a robbery.

## II.  DOUBLE JEOPARDY

The Fifth Amendment to the Constitution of the United States provides that no person "shall be subject for the same offense to be twice put in jeopardy of life or limb."  U.S.

---

[4] The Honorable William T. Newman, Jr.

Const. amend. V.  The Fifth Amendment's protection against double jeopardy applies to Virginia through the Fourteenth Amendment.  See Benton v. Maryland, 395 U.S 784, 795 (1969). "Double jeopardy protection is implicated even though the trial may have terminated without a verdict."  Brandon v. Commonwealth, 22 Va. App. 82, 88, 467 S.E.2d 859, 862 (1996). "The law is well settled 'that jeopardy means the danger of conviction.'"  Courtney v. Commonwealth, 23 Va. App. 561, 567, 478 S.E.2d 336, 338 (1996) (quoting Rosser v. Commonwealth, 159 Va. 1028, 1036, 167 S.E. 257, 259 (1933)).  Jeopardy attaches "once the jury is sworn."[5]  Kemph v. Commonwealth, 17 Va. App. 335, 340, 437 S.E.2d 210, 213 (1993).  Thus, because jeopardy attaches before the judgment becomes final, the constitutional protection encompasses the accused's "valued right to have his trial completed by a particular tribunal," Wade v. Hunter, 336 U.S. 684, 689 (1949); see also Bennefield v. Commonwealth, 21 Va. App. 729, 733, 467 S.E.2d 306, 308 (1996), that is, "the right . . . to have his trial completed before the first jury empanelled to try him," Oregon v. Kennedy, 456 U.S. 667, 673

---

[5] Although the Commonwealth contends jeopardy never attached because the trial judge sought alternate jurors who had not been chosen or sworn in, the record establishes that jeopardy had attached.  The jury was sworn in as a twelve-member panel by the clerk of court without objection.  Only after swearing the jury did the trial judge sua sponte determine that he would add alternate jurors.  Thus, alternates were not considered until after the jury was empanelled.  As such, it is irrelevant that potential alternate jurors were not sworn.

(1982).  "Immediately before, and immediately after empanelling and swearing of the jury things are much the same, but in one jeopardy has not attached while, in the other, it has."  Webb v. Hutto, 720 F.2d 375, 379 (4th Cir. 1983).  Therefore, when the trial judge sua sponte, over defendant's objection, declares a mistrial, the defendant is deprived of his "valued right to have his trial completed by a particular tribunal."  United States v. Jorn, 400 U.S. 470, 484 (1971) (citing Wade, 336 U.S. at 689).

The United States Supreme Court has explained why this "valued right" is so important.

> Even if the first trial is not completed, a
> second prosecution may be grossly unfair.
> It increases the financial and emotional
> burden on the accused, prolongs the period
> in which he is stigmatized by an unresolved
> accusation of wrongdoing, and may even
> enhance the risk that an innocent defendant
> may be convicted.  The danger of such
> unfairness to the defendant exists whenever
> a trial is aborted before it is completed.

Arizona v. Washington, 434 U.S. 497, 503-04 (1978) (internal citations omitted).  Generally, the prosecutor is only allowed to require the accused to stand trial once.

> [However, u]nlike the situation in which the
> trial has ended in an acquittal or
> conviction, retrial is not automatically
> barred when a criminal proceeding is
> terminated without finally resolving the
> merits of the charges against the accused.
> Because of the variety of circumstances that
> may make it necessary to discharge a jury
> before a trial is concluded, and because
> those circumstances do not invariably create
> unfairness to the accused, his valued right
> to have the trial concluded by a particular

- 10 -

> tribunal is sometimes subordinate to the
> public interest in affording the prosecutor
> one full and fair opportunity to present his
> evidence to an impartial jury.

Id. at 505.  However, in proceeding to a second trial the trial court must find "manifest necessity" for the mistrial declared over the objection of the defendant.  See id.; see also Courtney, 23 Va. App. at 569, 478 S.E.2d at 339.

The sole issue presented in this case is whether the original trial judge was faced with a "manifest necessity" to declare a mistrial.  "Manifest necessity" is not easily defined.  Rather, "Mr. Justice Story's classic formulation of the test has been quoted over and over again to provide guidance" in examining the unique factual situation in each case.  Washington, 434 U.S. at 506; see also Allen v. Commonwealth, 252 Va. 105, 109, 472 S.E.2d 277, 279 (1996) (utilizing Story's analysis defining "manifest necessity" for Fifth Amendment double jeopardy analysis and Virginia Code § 8.01-361, which allows the trial court to discharge a jury in cases of "manifest necessity").

> We think, that in all cases of this nature,
> the law has invested Courts of justice with
> the authority to discharge a jury from
> giving any verdict, whenever, in their
> opinion, taking all the circumstances into
> consideration, there is a manifest necessity
> for the act, or the ends of public justice
> would otherwise be defeated.  They are to
> exercise a sound discretion on the subject;
> and it is impossible to define all the
> circumstance, which would render it proper
> to interfere.  To be sure, the power ought

> to be used with the greatest caution, under
> urgent circumstances, and for very plain and
> obvious causes; and in capital cases
> especially, Courts should be extremely
> careful how they interfere with any of the
> chances of life, in favour of the prisoner.
> But, after all, they have the right to order
> the discharge; and the security which the
> public have for the faithful, sound and
> conscientious exercise of this discretion,
> rests, in this, as in other cases, upon the
> responsibility of the Judges, under their
> oaths of office.

United States v. Perez, 22 U.S. (9 Wheat.) 579, 580 (1824).  The term "necessity" cannot "be interpreted literally . . . [because] we assume that there are degrees of necessity and we require a 'high degree' before concluding that a mistrial is appropriate."  Washington, 434 U.S. at 506.  While the Commonwealth bears the burden of establishing that "manifest necessity" requires a mistrial, the trial judge is allowed to exercise "broad discretion" in deciding whether "manifest necessity" exists to justify discharging the jury when the trial judge has identified possible jury bias as the grounds for his or her mistrial order.  Washington, 434 U.S. at 509-10.  However, when jury bias is not at issue, "[w]e resolve any doubt 'in favor of the liberty of the citizen, rather than exercise what would be an unlimited, uncertain, and arbitrary judicial discretion.'"  Downum v. United States, 372 U.S. 734, 738 (1963) (quoting United States v. Watson, 28 Fed.Cas. 499, 501 (1868)); see Brandon, 22 Va. App. at 91, 467 S.E.2d at 863.

The emphasis is not whether the trial judge considered a potential problem that he or she might encounter, but rather whether the trial judge "acted responsibly and deliberately, and accorded careful consideration to respondent's interest in having the trial concluded in a single proceeding." Washington, 434 U.S. at 516. The trial judge cannot "act arbitrarily or without good cause to believe that [declaring a mistrial] was necessary to prevent great injustice either to the Commonwealth or to the defendant." Brandon, 22 Va. App. at 91, 467 S.E.2d at 863. In exercising his or her sound discretion, a trial judge must consider all alternatives "to assure that, taking all the circumstances into account, there was a manifest necessity for the sua sponte declaration of this mistrial." Jorn, 400 U.S. at 487; see also Gilliam v. Foster, 61 F.3d 1070 (4th Cir. 1995) (holding that the critical inquiry is whether less drastic alternatives were available to the court); Harris v. Younger, 607 F.2d 1081, 1085 (4th Cir. 1979) ("if less drastic alternatives than a mistrial were available, they should have been employed to protect the defendant's interest in promptly ending the trial"). Thus, the trial court should consider the possibility of a trial continuance before abruptly declaring a mistrial and discharging the jury. Jorn, 400 U.S. at 487; see also United States v. Shafer, 987 F.2d 1054 (4th Cir. 1993) (holding that an abuse of discretion occurs if the trial judge

- 13 -

fails to fully consider all alternatives, including a continuance, before declaring a mistrial).

The instant case is analogous to Jorn. In Jorn, after the jury was empanelled, the government called five witnesses whom the defendant allegedly aided in preparing fraudulent tax returns. Defense counsel requested that the court advise the witnesses of their constitutional rights before testifying. The trial court informed the witnesses that anything they said during the trial could be used against them in a subsequent criminal trial. The witnesses acknowledged that they were aware of their rights and were previously warned of their rights by the IRS. "The trial judge indicated, however, that he did not believe the witness[es] had been given any warning at the time [they were] first contacted by the IRS, and refused to permit [them] to testify until [they] had consulted an attorney." Jorn, 400 U.S. at 473. When the prosecutor attempted to explain to the trial court that he intended to prosecute the case in a manner that did not require the witnesses to incriminate themselves, the trial judge abruptly declared a mistrial and discharged the jury. Id. at 487. The United States Supreme Court held,

> [i]t is apparent from the record that no consideration was given to the possibility of a trial continuance; indeed, the trial judge acted so abruptly in discharging the jury that, had the prosecutor been disposed to suggest a continuance, or the defendant to object to the discharge of the jury,

- 14 -

there would have been no opportunity to do so.  When one examines the circumstances surrounding the discharge of this jury, it seems abundantly apparent that the trial judge made no effort to exercise a sound discretion to assure that, taking all the circumstances into account, there was a manifest necessity for the sua sponte declaration of this mistrial.  United States v. Perez, 9 Wheat., at 580.  Therefore we must conclude that in the circumstances of this case, appellee's reprosecution would violate the double jeopardy provision of the Fifth Amendment.

Jorn, 400 U.S. at 487.

The instant case also contains an element discussed in United States v. Sartori, 730 F.2d 973, 975 (4th Cir. 1984).  In Sartori, the trial judge, prior to empanelling the jury, knew of a potential conflict of interest with his hearing the case. After the third witness testified, the trial judge believed "his continued presence at trial was not consistent with the appearance of judicial propriety."  Id. at 975.  After the fourth witness testified, the trial judge concluded there were no alternatives and declared a mistrial.  The Fourth Circuit first emphasized that alternatives, particularly substitution of another judge was a viable alternative to declaring a mistrial. See id. at 976.  The Fourth Circuit also held, "[if the trial judge] had serious doubts about his ability to remain impartial, he should have recused himself before empanelling the jury. Similarly, his concerns about the appearance of judicial impropriety should have been addressed before jeopardy

- 15 -

attached." Id. (emphasis added). Once the trial judge chose to proceed with the trial, "completing the trial offered a less drastic alternative to declaring a mistrial over the defendant's objections." Id. Thus, when a potential problem is known before the jury is empanelled, the trial judge must take precautions to deal with it before empanelling the jury. If the same problem is the basis for the trial court's declaration of a mistrial later in the proceeding, the double jeopardy protection is implicated.

The timing of the sua sponte declaration of the mistrial also must be considered. See Grandberry v. Bonner, 653 F.2d 1010 (5th Cir. Unit A 1981) (the court could not have considered alternatives to mistrial when the court declared a mistrial within minutes of learning that a juror had become slightly ill; alternatives might have prevented the necessity for declaring a mistrial if the court had considered them and given counsel a chance to speak); see also Brady v. Samaha, 667 F.2d 224 (1st Cir. 1981) (a quickly reached decision, reflected by a rapid sequence of events culminating in a mistrial indicates that the judge could not have considered alternatives to declaring a mistrial and thus could not have accorded careful consideration to defendant's right to have the trial concluded in one proceeding).

In the instant case, before empanelling the jury, the trial court, Commonwealth's attorney and defense counsel were aware

that several prospective jurors were excused from service on the following day. No additional jurors were called. The problem was discussed at least three times prior to the swearing of the jury and the court was reminded of this problem only seconds prior to having the clerk swear the jury. Both the Commonwealth's attorney and defense counsel informed the trial court that the trial was likely to extend into the following day. This was discussed at an early stage of the proceeding. The alternatives were to bring in additional jurors or if none were available to continue the case until a proper jury could be made available. See generally Sartori, 730 F.2d at 976. The trial court failed to consider or discuss with counsel alternatives other than a mistrial. The trial court could have begun the trial, adjourned early on the first day, if necessary, and ordered a continuance until the jury members were available to return and hear the remainder of the case. The mistrial was declared in a matter of minutes, implicating the concerns of Grandberry, 653 F.2d 1010, and Brady, 667 F.2d 224. No matter the salutary motives of the original trial judge, the double jeopardy protections of the United States Constitution are mandatory.

In sum, we hold that when the jury was empanelled and sworn, the trial judge was aware of the issues which led to his later declaration of the mistrial. He failed to consider possible alternatives, such as a continuance, prior to his sua

- 17 -

sponte declaration of a mistrial.  Thus, because no manifest necessity required the trial judge to declare a mistrial, the double jeopardy prohibition bars the retrial of appellant.[6]

Reversed and dismissed.

---

[6] Because we reverse on double jeopardy grounds, we do not address the additional issue granted.