Present:  All the Justices

COMMONWEALTH OF VIRGINIA
                        OPINION BY JUSTICE LEROY R. HASSELL, SR.
v.  Record No. 010913                    March 1, 2002

DARRELL WASHINGTON

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal, we consider whether a defendant waived his double jeopardy protections afforded by the Fifth Amendment to the United States Constitution.

I.

Darrell Washington was indicted by a grand jury in Arlington County for robbery in violation of Code § 18.2-58 and use of a firearm during the commission of a robbery in violation of Code § 18.2-53.1.  His trial commenced in the Circuit Court of Arlington County on December 15, 1999.  The jury panel consisted of 20 persons.  One juror, identified as Juror No. 5, informed the court that he was excused from jury service for the next day.  Four other jurors also informed the court that they had been excused from jury service for the following day.  The court, however, permitted each of these jurors to remain seated as members of the panel.

Before counsel began to conduct their voir dire, the circuit court asked the jurors how many were excused for the next day and directed defendant's counsel and the Commonwealth's Attorney to observe the members of the panel

who raised their hands.  After voir dire had been conducted, and before counsel began to exercise their peremptory strikes, the court asked members of the panel to raise their hands if they were excused from jury service the next day.

Defendant's counsel approached the bench and informed the court that she was not going to exercise her peremptory strikes based upon the availability of members of the jury panel.  The court responded that she was not required to do so and that it would seek to seat a jury and alternates. Defendant's counsel and the Commonwealth's Attorney exercised their peremptory strikes.  After the oath had been administered to the jury, the court directed the jurors who were excused the following day to raise their hands, and one juror did so.  The court suggested seating an alternate.

There were only two potential veniremen available to serve as an alternate who were not among the original 20 individuals selected as members of the jury panel.  The circuit court suggested that it would use the two members of the venire who were not called among the original 20 panel members, and the court decided to add two of the jurors who had been stricken by defendant's counsel and the Commonwealth's Attorney.  Defendant's counsel and the Commonwealth's Attorney objected to this procedure.

2

Next, the following colloquy occurred among the court, the Commonwealth's Attorney, and defendant's counsel:

"[DEFENDANT'S COUNSEL]:  But, Your Honor, under normal circumstances, an alternate would not know that [he was an alternate]. . . .  I would object to that system being used.

"THE COURT:  Commonwealth.

"[COMMONWEALTH'S ATTORNEY]:  Again, I have the same position because now I'm basically out of a strike, and [defendant's counsel] is left with the potential of picking who is going to be the alternate.

"THE COURT:  [Code § ] 8.01-360 says, In no event shall alternates be told they are alternates.

"[COMMONWEALTH'S ATTORNEY]:  I have --

"THE COURT:  You are both objecting?

"[COMMONWEALTH'S ATTORNEY]:  Well, I'm objecting not so much because the other person is going to know they are an alternate, but because I don't have a decision in who gets to be the alternate.

"THE COURT:  That's a mistrial.

"[DEFENDANT'S COUNSEL]:  Your Honor, and I'm going to say this --

"THE COURT:  Now you are going to have jeopardy.

"[DEFENDANT'S COUNSEL]:  We have jeopardy, but the Court --

"THE COURT:  The Commonwealth won't agree to the cure.

"[COMMONWEALTH'S ATTORNEY]:  There wasn't a jury sworn.

3

"THE COURT: No, sir.

"[DEFENDANT'S COUNSEL]: The jurors were sworn.

"THE COURT: I tried to get this case tried and tried to get it done, but we are going to fight over this. And you want your statutory right. You want your statutory right.
"We do not have sufficient jurors to have a replacement for the juror sworn.
"That's a mistrial.

"[DEFENDANT'S COUNSEL]: Thank you, Your Honor.

"[COMMONWEALTH'S ATTORNEY]: I'm going to ask, Your Honor -- could we place it on the docket for another day?

"THE COURT: Well, of course that's what we are going to do.

"[DEFENDANT'S COUNSEL]: Well, I think there's really an argument about --

"THE COURT: Now [defendant's counsel is] going to claim that jeopardy attaches.

"[DEFENDANT'S COUNSEL]: Well, it did attach because the jurors were sworn.
"We will get the transcript --

"THE COURT: Now [defendant's counsel] is going to move to dismiss on double jeopardy grounds.
"You're objecting to my attempted cure to get a jury in the box, and you have a right to do that, and you have statutory authority for it.

"[DEFENDANT'S COUNSEL]: And we can set a date."

At a subsequent trial, the defendant made a motion to dismiss the indictments on the basis that he was placed in jeopardy twice in violation of the Fifth Amendment to the

4

Constitution of the United States.  The circuit court, with a different judge presiding, denied the motion, and the case proceeded to trial.  The jury convicted the defendant of both charges and fixed his punishment at five years in the penitentiary on the robbery charge and three years in the penitentiary on the use of a firearm charge.  The circuit court confirmed the judgment of the jury, and the defendant appealed to the Court of Appeals.

The Court of Appeals held that the Double Jeopardy Clause of the Constitution of the United States barred the defendant's second trial, and the Court entered a judgment that reversed the judgment of the circuit court and dismissed the defendant's convictions.  Washington v. Commonwealth, 35 Va. App. 202, 220, 543 S.E.2d 638, 646 (2001).  The Commonwealth appeals.

## II.

The Fifth Amendment to the Constitution of the United States provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." Explaining this constitutional provision, which is referred to as the Double Jeopardy Clause, the United States Supreme Court has stated:

> "The underlying idea, one that is deeply ingrained in at least the Anglo-American system of

5

jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."

Green v. United States, 355 U.S. 184, 187-88 (1957); accord Monge v. California, 524 U.S. 721, 732 (1998); Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 869-70 (1994); Abney v. United States, 431 U.S. 651, 661-62 (1977); Allen v. Commonwealth, 252 Va. 105, 108-09, 472 S.E.2d 277, 279 (1996).

The Double Jeopardy Clause also grants a defendant the right to have his trial completed by a particular tribunal, Wade v. Hunter, 336 U.S. 684, 689, reh'g denied, 337 U.S. 921 (1949), which means "the right . . . to have his trial completed before the first jury empaneled to try him." Oregon v. Kennedy, 456 U.S. 667, 673 (1982); accord Allen, 252 Va. at 109, 472 S.E.2d at 279.

Even though jeopardy attaches once the jury has been sworn, a defendant's double jeopardy protection can be waived. For example, we have stated that "[a] person on trial for a capital or lesser offense may waive his right to plead former jeopardy. This waiver may be expressed or implied." Mack v. Commonwealth, 177 Va. 921, 930, 15 S.E.2d 62, 65 (1941). Indeed, other courts have recognized that a defendant's double

6

jeopardy protection is not an absolute bar to reprosecution once a jury has been empaneled and sworn and that the right guaranteed by the Double Jeopardy Clause may be waived by consent. United States v. Nichols, 977 F.2d 972, 974 (5th Cir. 1992), cert. denied, 510 U.S. 833 (1993); United States v. DiPietro, 936 F.2d 6, 9-12 (1st Cir. 1991); United States v. Bauman, 887 F.2d 546, 549 (5th Cir. 1989), cert. denied sub nom. Talamas v. United States, 493 U.S. 1077 (1990); United States v. Miller, 742 F.2d 1279, 1284 (11th Cir. 1984), cert. denied, 469 U.S. 1216 (1985); Raslich v. Bannan, 273 F.2d 420, 420-21 (6th Cir. 1959).

The various United States Courts of Appeals have held that a defendant's consent to a mistrial is implied when a defendant had an opportunity to object to a mistrial but failed to do so. United States v. Buljubasic, 808 F.2d 1260, 1265-66 (7th Cir.), cert. denied, 484 U.S. 815 (1987); United States v. Puleo, 817 F.2d 702, 705 (11th Cir.), cert. denied, 484 U.S. 978 (1987); United States v. Goldstein, 479 F.2d 1061, 1067 (2d Cir.), cert. denied, 414 U.S. 873 (1973). And, in Peretz v. United States, 501 U.S. 923, 936 (1991), the Supreme Court cited with approval the legal principle articulated in United States v. Bascaro, 742 F.2d 1335, 1365 (11th Cir. 1984), cert. denied sub nom. Hobson v. United

States, 472 U.S. 1017, and cert. denied sub nom. Waldrop v. United States, 472 U.S. 1021 (1985), that the absence of an objection by a defendant constitutes a waiver of the defendant's double jeopardy protection.

We have repeatedly and consistently held that a litigant must object to a ruling of the circuit court if that litigant desires to challenge the ruling upon appeal.  Remington v. Commonwealth, 262 Va. 333, 356, 551 S.E.2d 620, 634 (2001) (defendant could not challenge a verdict form on appeal because he failed to make an objection to that form in the circuit court); Schmitt v. Commonwealth, 262 Va. 127, 138, 547 S.E.2d 186, 194 (2001), cert. denied, ___ U.S. ___, 122 S.Ct. 840 (2002) (defendant could not challenge on appeal the admissibility of evidence because he failed to object to that evidence in the circuit court and, therefore, his objection was waived); Lenz v. Commonwealth, 261 Va. 451, 467, 544 S.E.2d 299, 308, cert. denied, ___ U.S. ___, 122 S.Ct. 481 (2001) (defendant could not challenge jury instruction on appeal because he did not object in the circuit court); Overton v. Commonwealth, 260 Va. 599, 603-04, 539 S.E.2d 421, 423 (2000), cert. dismissed, 532 U.S. 968 (2001) (defendant could not challenge the admissibility of photographs that had been admitted in the circuit court because he failed to make

8

an objection); Vinson v. Commonwealth, 258 Va. 459, 466, 522 S.E.2d 170, 175 (1999), cert. denied, 530 U.S. 1218 (2000) (defendant could not challenge the admissibility of certain expert testimony because he failed to raise an objection in the circuit court); Cherrix v. Commonwealth, 257 Va. 292, 310, 513 S.E.2d 642, 654, cert. denied, 528 U.S. 873 (1999) (defendant could not challenge the circuit court's failure to advise the jury of his eligibility, or lack thereof, for parole because he failed to object in the circuit court and his failure to object constituted a waiver); Barnabei v. Commonwealth, 252 Va. 161, 177, 477 S.E.2d 270, 279 (1996), cert. denied, 520 U.S. 1224 (1997) (defendant could not challenge jury instructions on appeal because he failed to object in the circuit court when the instructions were given).

We hold that based upon the record before this Court, the defendant implicitly consented to the circuit court's declaration of a mistrial. Having consented to the mistrial, the defendant waived his double jeopardy rights. We note that during oral argument of this appeal, defendant's counsel conceded that she could point to no part of the record of the defendant's first trial to show that she had made an express objection to the circuit court's declaration of a mistrial.

In this case, the defendant does not contend that he was deprived of an opportunity to make a meaningful objection to the circuit court's declaration of a mistrial. Indeed, after the circuit court declared the mistrial, defendant's counsel and the Commonwealth's Attorney continued a dialogue with the circuit court, and the defendant made no objection.

We observe that our holding is consistent with our decision in Allen v. Commonwealth, 252 Va. 105, 472 S.E.2d 277 (1996). In Allen, a jury convicted a defendant of breaking and entering in violation of Code § 18.2-91 and grand larceny in violation of Code § 18.2-95. The circuit court dismissed the jury and continued the case for sentencing. The following day, the Commonwealth's Attorney moved for a mistrial on the basis that one of the jurors was a non-resident of the county where the case was tried. The circuit court stated in a letter opinion that "the defendant concurred that there was an improper jury but requested that the case be dismissed on the basis that jeopardy had already attached and the case could not be retried." The circuit court overruled the defendant's objection to a new trial, sustained the Commonwealth's motion for a mistrial, and ordered the case continued to the next criminal docket call. 252 Va. at 107, 472 S.E.2d at 278.

10

The defendant's second trial concluded in a hung jury and a second declaration of mistrial. The circuit court ruled that "the defendant has not waived his right to object to a [third] trial . . . based on the [D]ouble [J]eopardy [C]lause [but that] a [third] trial . . . will not amount to double jeopardy." At a third trial, a police officer testified that the defendant had refused to make a statement to the police. Invoking the Fifth Amendment guarantee against self-incrimination, the defendant moved for a mistrial, which was granted. At a fourth trial, the defendant was convicted on both charges. Id.

We held that the defendant in Allen did not consent to the prosecutor's motion for a mistrial in the first trial. We stated:

> "As we read the record, [the defendant] never consented to the prosecutor's motion for mistrial. [The Commonwealth's] motion [to dismiss] had multiple objectives, viz., vacation of the penalty verdict rendered by a jury mistakenly believed to be unqualified, the assembly of a new jury, and a new trial by that jury. [The defendant], laboring under the same misconception, 'concurred that there was an improper jury'. Nowhere does the record before us show that [the defendant] ever agreed that 'the verdicts were invalid'; or that the judge should 'set aside the jury verdicts'; or that there should be a new trial by a new jury. Rather, as the [circuit court's] letter opinion indicates, [the defendant] merely 'requested that the case be dismissed on the basis that jeopardy had already attached and the case could not be retried.'"

11

Id. at 111, 472 S.E.2d 280. The circuit court ruled that the defendant in Allen had "preserved the objection to a [second] trial . . . by noting his objection on the record" and that "the defendant has not waived his right to object to a [third] trial . . . based upon the [D]ouble [J]eopardy [C]lause." Id.

Unlike the defendant in Allen, the defendant in this case tacitly consented to the mistrial. For example, defendant's counsel in this case did not object to a new trial once the circuit court had declared a mistrial. Indeed, defendant's counsel in this case actually requested that the court set a date for a new trial and she participated, without objection, in the selection of the new trial date. Moreover, the record in this case clearly shows that during the first trial, defendant's counsel made clear and unequivocal objections to rulings of the circuit court that were adverse to her position. When she desired to object, she made specific objections. And, as we have already stated, she made no such objection to the court's declaration of a mistrial.

Accordingly, we will reverse the judgment of the Court of Appeals, and we will enter a final judgment reinstating the defendant's convictions.

Reversed and final judgment.

JUSTICE KOONTZ, with whom JUSTICE LACY and JUSTICE KEENAN join, dissenting.

12

I respectfully dissent.  The record in this case clearly establishes, as the Court of Appeals of Virginia determined, that Darrell Washington was twice put in jeopardy in violation of his rights under the Fifth Amendment to the Constitution of the United States as a result of his two jury trials in the Circuit Court of Arlington County for the same offenses.  I cannot join an opinion which nevertheless declines to address and enforce those rights by concluding, in effect, that Washington is procedurally precluded on appeal from asserting his constitutional claim because he did not expressly object to the original trial judge's <u>sua</u> <u>sponte</u> declaration of a mistrial during the first trial.  In this particular case, the undisputed facts do not support the majority's application of a procedural bar and, moreover, those facts considered under established legal principles do not support the majority's holding that Washington "implicitly consented" to the mistrial and, thus, "waived his double jeopardy rights."

The following well established principles are pertinent to the proper analysis of this case.  The right not to be subjected to double jeopardy attaches in a criminal case when the jury is impaneled and sworn.  <u>Serfass v. United States</u>, 420 U. S. 377, 388 (1995); <u>see</u> <u>also</u> <u>Martin v. Commonwealth</u>, 242 Va. 1, 8 406 S.E.2d 15, 18 (1991).  The Double Jeopardy

Clause not only protects the accused from retrial after being acquitted, but also gives the accused a "valued right to have his trial completed by a particular tribunal," Wade v. Hunter, 336 U.S. 684, 689 (1949), that is, "the right . . . to have his trial completed before the first jury impaneled to try him." Oregon v. Kennedy, 456 U.S. 667, 673 (1982); see also Allen v. Commonwealth, 252 Va. 105, 109, 472 S.E.2d 277, 279 (1996).

However, there are well recognized circumstances in which a defendant may be retried even though a prior jury was impaneled and sworn, and a mistrial was declared before that jury reached a verdict. Downum v. United Stated, 372 U.S. 734, 735-36 (1963); Wade, 336 U.S. at 688. When those circumstances arise in a particular case, the underlying rationale for permitting a retrial is that the defendant's right to have his trial completed by a particular jury is "subordinated to the public's interest in fair trials designed to end in just judgments." Wade, 336 U.S. at 689.

In this regard, the United States Supreme Court has developed a two-part test to be used in determining whether double jeopardy principles have been violated when a trial results in a mistrial. The first part of the test requires the court to determine whether the accused consented to the

14

declaration of a mistrial.  If so, then double jeopardy

principles do not apply, and no further inquiry need be made

unless it appears that improper actions of the prosecutor or

the trial court were intended to provoke the mistrial.  Oregon

v. Kennedy, 456 U.S. at 676; United States v. Dinitz, 424 U.S.

600, 611 (1976).  If the accused did not consent to the

declaration of a mistrial, then, under the second prong of the

Supreme Court's test, the mistrial will bar retrial unless

there was a "manifest necessity" for the mistrial.  United

States v. Perez, 22 U.S. 579, 580 (1824); see also Allen, 252

Va. at 109, 472 S.E.2d at 279.

In the present case, it is undisputed that the first jury

was sworn and, thus, that Washington was put in jeopardy at

his first trial.  Neither counsel requested that an alternate

juror be seated.  The original trial judge[1] thereafter sua

sponte declared a mistrial because there were not sufficient

prospective jurors in the venire from whom to select an

alternate juror in accord with the requirement of Code § 8.01-

360 that alternate jurors initially not be made aware of that

status.  Beyond question, the judge simply wanted to

accommodate a juror who was to be excused from jury service

---

[1] Judge Paul F. Sheridan presided at Washington's first
trial.  Judge William T. Newman, Jr. presided at Washington's
second trial.

the following day.  The judge explained his declaration of a mistrial in the following way:

> The alternative . . . was to try the case and see if it got in and done by 6 o'clock tonight.
>
> It is 12:18 on the Court's clock.  I'm told there were seven or eight Commonwealth witnesses. Both attorneys imply that they couldn't do that.
>
> Therefore, rather than make this jury wait around all day and see if it can be done properly, the mistrial for the inability to have 12 jurors hear and decide this case properly is equivalent to a sick juror or a missing juror, taking us under the 12 [required by Code § 19.2-262(B)].

The record further establishes that the judge was fully aware of the constitutional implications of his sua sponte declaration of a mistrial.  Indeed, he explained to the Commonwealth's Attorney that "[i]t is very important constitutionally.  The jury was sworn."  Moreover, the judge was aware that Washington was not consenting to a mistrial in light of Washington's repeated assertions that jeopardy had attached when the jury was sworn.  Again, the judge stated that "[n]ow [Washington's counsel is] going to claim that jeopardy attaches."  In this context, the judge's statements reflect that he considered the inability properly to select an alternate juror to create a manifest necessity for a mistrial so that a retrial would not violate Washington's double jeopardy rights.  The judge was simply wrong.

16

The majority, acknowledging as it must that Washington did not expressly consent to the mistrial, concludes that he "implicitly" or "tacitly" consented to the mistrial because he failed to make an "express objection" in the circuit court during the first trial. The express objection to which the majority refers is that contained in our Rule 5:25, which is frequently referred to as the contemporaneous objection rule. Its counterpart is Rule 5A:18 applicable in the Court of Appeals. Rule 5:25, in pertinent part, provides that: "Error will not be sustained to any ruling of the trial court . . . unless objection was stated with reasonable certainty at the time of the ruling." This rule requires that an objection be made with sufficient specificity to enable the trial judge to rule intelligently and, thus, to avoid unnecessary reversals on appeal. Absent such objection, the issue will not be considered for the first time on appeal. See, e.g., Fisher v. Commonwealth, 236 Va. 403, 414, 374 S.E. 46, 52 (1988), cert. denied, 490 U.S. 1028 (1989). The majority correctly states that we have repeatedly and consistently held that a litigant must object to a ruling of the trial court if that litigant desires to challenge the ruling on appeal and cites numerous prior decisions of this Court that confirm that proposition. None of those decisions, however, requires the use of the

17

specific words "object" or "objection" as if such words are somehow magic talismans which the majority now seems to suggest are required by Rule 5:25. Facially, this rule merely requires that an objection be made "with reasonable certainty."

In any event, the procedural bar of Rule 5:25 is not applicable in this particular case for a number of reasons that also distinguish this case from those cited by the majority. Initially, I note that at Washington's second trial, the Commonwealth asserted that the mistrial of the first trial was the result of a manifest necessity when the prospective jury pool proved inadequate to permit the trial to be heard on the scheduled day. The Commonwealth did not contend at that time that Washington had waived his right to assert former jeopardy by failing to make an express objection to the original trial judge's declaration of a mistrial. The Commonwealth makes this assertion for the first time on appeal. The trial judge merely acquiesced in the original trial judge's determination of a manifest necessity for a mistrial as being a matter of discretion. In this context, surely Washington had objected to the mistrial with sufficient certainty to satisfy Rule 5:25 because the original trial judge, the Commonwealth, and the subsequent trial judge were

18

aware that Washington was asserting that a retrial would violate his double jeopardy rights.  Manifest necessity was the focus of the issue to be resolved; waiver was not.

Moreover, the issue to be determined in this appeal is whether, under the circumstances of this particular case, Washington implicitly consented to the mistrial so as to have waived his double jeopardy claim, or in the absence of such consent, whether a manifest necessity existed at the time of the mistrial to permit a retrial.  The Commonwealth does not assert that the original trial judge was unaware of the constitutional implications of his sua sponte declaration of a mistrial and the record would refute such an assertion had it been made.  Thus, for purposes of satisfying the requirements of Rule 5:25, there is no dispute that Washington did not consent to the mistrial.  Whether the failure expressly to object to the mistrial constitutes a waiver of Washington's constitutional claim is a separate and distinct issue from the issue of consent, although the two are closely related.  Because the record establishes beyond question that the original trial judge was made aware that Washington was asserting that his constitutional right against double jeopardy would be violated by retrial, the procedural bar of

19

Rule 5:25 is not applicable.  Accordingly, the merits of the issues presented by this appeal must be addressed.

The Commonwealth contends that in the absence of an express objection, there is an implied consent to the declaration of a mistrial and urges that we adopt the rule, applied by several of the federal circuits, that if the defendant had an opportunity to object to a declaration of a mistrial, but failed to do so, the consent thus implied acts as a waiver to any subsequent claim of double jeopardy.[2]  See, e.g., United States v. DiPietro, 936 F.2d 6, 9-10 (1st Cir.

---

[2] Although the United States Supreme Court has never squarely held that retrial is permissible following a defendant's implied consent to a declaration of a mistrial, see, e.g., Escobar v. O'Leary, 943 F.2d 711, 716 n.3 (7th Cir. 1991), it has recognized that there can be no question of consent where the defendant was not given the opportunity to object.  United States v. Jorn, 400 U.S. 470, 487 (1971).

Among the federal circuits that have considered the issue, some have taken a more restrictive view than that advocated here by the Commonwealth, holding that the totality of the circumstances attendant on a declaration of a mistrial, and not merely the opportunity for and the absence of an express objection by the defendant, are to be considered in determining whether there has been an implied consent which would justify finding a waiver of double jeopardy rights. See, e.g., United States v. Smith, 621 F.2d 350, 352 (9th Cir. 1980), cert. denied, 449 U.S. 1087 (1981); United States v. Goldstein, 479 F.2d 1061, 1067 (2d Cir.), cert. denied, 414 U.S. 873 (1973).  At least one circuit has been even more restrictive, holding that consent should be implied " 'only where the circumstances positively indicate a defendant's willingness to acquiesce in the [mistrial] order.' "  Glover v. McMackin, 950 F.2d 1236, 1240 (6th Cir. 1991) (quoting Jones v. Hogg, 732 F.2d 53, 57 (6th Cir. 1984)).

20

1991); Camden v. Circuit Court of Second Judicial Dist., Crawford County, Ill., 892 F.2d 610, 614-18 (7th Cir. 1989), cert. denied, 495 U.S. 921 (1990); United States v. Puleo, 817 F.2d 702, 705 (11th Cir.), cert. denied, 484 U.S. 978 (1987).

In determining whether, and to what extent, the failure to make an express objection to a declaration of a mistrial should act as an implied consent, the focus must be on the consequence that the implied consent is also an implied waiver of the defendant's "valued right to have his trial completed by a particular tribunal." Wade, 336 U.S. at 689. In Allen, we recognized that " '[w]aiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege,' and with respect to fundamental constitutional rights, 'courts indulge every reasonable presumption against waiver.' " 252 Va. at 111, 472 S.E.2d at 280 (citations omitted). In that case, the Commonwealth requested a mistrial and the defendant did not make an express objection to the trial court's granting that request. Rather, "[the defendant] merely 'requested that the case be dismissed on the basis that jeopardy had already attached and the case could not be retried.' " Id. Agreeing with an opinion expressed by the trial court in a subsequent proceeding, we held that the

21

defendant had thus "'preserved the objection to a [second] trial.' "  Id.

Although we did not expressly adopt in Allen the "implied consent rule" urged by the Commonwealth in this case, our reasoning in that case is closely analogous to that used by the federal circuits which have applied a "totality of the circumstances" standard in determining whether the absence of an express objection to a declaration of a mistrial amounts to an implied consent thereto and a waiver of double jeopardy rights thereafter.  Moreover, our reasoning in Allen is inconsistent with the Commonwealth's position in the present case that the failure to expressly object to a mistrial, standing alone, will constitute an implied consent to a declaration of a mistrial.  Accord Minnesota v. Olson, 609 N.W.2d 293, 300 (Minn. Ct. App. 2000); Benson v. Nevada, 895 P.2d 1323, 1327 (Nev. 1995); Ex parte Little, 887 S.W.2d 62, 66 (Tex. Crim. App. 1994); Missouri v. Tolliver, 839 S.W.2d 296, 299 (Mo. 1992).

Contrary to the majority's view, I am of opinion that the circumstances of Washington's case are virtually indistinguishable from those in Allen.  As in that case, Washington's counsel, while not expressly objecting to the mistrial, asserted that jeopardy had attached and that any

22

retrial would violate the defendant's double jeopardy rights. Indeed, in the present case, this assertion was more forcefully made.  Accordingly, this assertion precludes a finding of an implied consent to the sua sponte declaration of a mistrial that would act as a waiver of the very constitutional rights Washington's counsel was asserting.  In its attempt to distinguish Allen from the present case, the majority effectively overturns this Court's decision in that case sub silentio.

Absent consent, express or implied, to the declaration of a mistrial, the question becomes whether manifest necessity permitted Washington's retrial.  A trial court "may discharge the jury when it appears . . . that there is a manifest necessity for such discharge."  Code § 8.01-361.  "There is no general rule as to what facts and circumstances constitute such a necessity but the trial court is authorized by the statute to exercise its discretion in making the determination according to the circumstances of the case."  Turnbull v. Commonwealth, 216 Va. 328, 335, 218 S.E.2d 541, 546 (1975).  "[T]he key word 'necessity' cannot be interpreted literally; instead . . . there are degrees of necessity and . . . a 'high degree' [is required] before . . . a mistrial is appropriate."  Arizona v. Washington, 434 U.S. 497, 506 (1978).  Because the

23

defendant's right to have his trial concluded by a particular tribunal is frustrated by any mistrial, the Commonwealth has the burden of justifying the mistrial to avoid the double jeopardy bar and that "burden is a heavy one." Id. at 505. Thus, "any doubt 'in favor of the liberty of the citizen, rather than exercise what would be an unlimited, uncertain, and arbitrary judicial discretion,' " will be resolved in the favor of the defendant. Downum, 372 U.S. at 738 (quoting United States v. Watson, 28 F. Cas. 499, 501 (1868)).

In Arizona v. Washington, the United States Supreme Court recognized "the spectrum of trial problems which may warrant a mistrial and which vary in their amenability to appellate scrutiny." 434 U.S. at 510. In that context, I am of opinion that the appropriate standard of review for a double jeopardy claim following a mistrial is to be determined by whether the underlying reasons for the mistrial concern issues best left to the informed discretion of the trial judge or issues that more nearly invoke questions of law for which closer appellate review is appropriate.

In Smith v. Commonwealth, 239 Va. 243, 389 S.E.2d 871, cert. denied, 498 U.S. 881 (1990), for example, we upheld the trial court's determination that a single misstatement by the Commonwealth's Attorney in closing argument, which was

immediately noted by the trial court and retracted by the Commonwealth's Attorney, did not warrant granting the defendant's request for a mistrial. Id. at 266-67, 389 S.E.2d at 884. Implicit in the Court's holding is that this issue was clearly a matter best left to the discretion of the trial court because the trial judge was in the better position to evaluate the effect of the misstatement and the subsequent curative efforts on the jury. However, for the reasons that follow, such deference to the original trial judge's discretion is not appropriate in the present case. Rather, the record must be reviewed to determine whether it establishes that the judge "acted responsibly and deliberately, and accorded careful consideration to [the defendant's] interest in having the trial concluded in a single proceeding." Arizona v. Washington, 434 U.S. at 516.

In exercising his discretion to declare a mistrial in this case, the original trial judge was required to consider whether there were less severe alternatives "to assure that, taking all the circumstances into account, there was a manifest necessity for the sua sponte declaration of this mistrial." Jorn, 400 U.S. at 487; see also Gilliam v. Foster, 61 F.3d 1070, 1081 (4th Cir. 1995) (holding that the critical inquiry is whether less drastic alternatives were available to

25

the court); Harris v. Young, 607 F.2d 1081, 1085 (4th Cir. 1979), cert. denied, 444 U.S. 1025 (1980) ("If less drastic alternatives than a mistrial were available, they should have been employed in order to protect the defendant's interest in promptly ending the trial"). Thus, the judge should have considered the possibility of a trial continuance before abruptly declaring a mistrial and discharging the jury. Jorn, 400 U.S. at 487; see also United States v. Shafer, 987 F.2d 1054, 1058 (4th Cir. 1993) (holding that an abuse of discretion occurs if the trial judge fails to fully consider all alternatives, including a continuance, before declaring a mistrial).

It is the duty of the trial judge to apply the statutes governing jury selection in order to procure an impartial jury for the defendant. Slade v. Commonwealth, 155 Va. 1099, 1106, 156 S.E. 388, 391 (1931); Code §§ 8.01-357 and -360. The record of this case is clear that before the voir dire process began, the judge was aware that the number of prospective jurors in the jury pool was barely adequate to provide Washington with a jury properly selected in accordance with the governing law. Nonetheless, the judge elected to proceed to "see if we don't cure this as we go." Moreover, when it became apparent that the jury that had been selected and sworn

26

would not be able to hear the case in the timeframe that the judge desired, he first attempted to fashion a remedy outside that permitted by the governing statutes and then abruptly declared a mistrial. In doing so, the judge did not consider a continuance of the trial as an alternative.

A continuance of the trial, either prior to voir dire or after the jury was sworn but before any evidence was heard, would not have injured Washington's interest in having his trial concluded in a single proceeding. Though a continuance might have caused some inconvenience to all concerned, that inconvenience would have been no greater than that occasioned by the mistrial.[3] Under these circumstances, the judge gave insufficient consideration to other alternatives before reaching the conclusion that there was a manifest necessity to declare a mistrial. Indeed, the Commonwealth has not borne its burden to establish that a manifest necessity for a mistrial existed. The possible inability to complete a felony criminal trial in one day does not constitute a manifest necessity for a mistrial. Accordingly, in my view, the Court of Appeals did not err in reversing the judgment of the trial

---

[3] There is no indication in the record that there were any speedy trial concerns that would have arisen as a result of the judge's ordering a continuance of Washington's first trial.

court in Washington's second trial deferring to the discretion of the original trial judge on that issue.

For these reasons, I would affirm the judgment of the Court of Appeals reversing the judgment of the trial court and dismissing the indictments against Washington with prejudice.